753 A.2d 17

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Thomas J. MOONEY.**

**Misc. AG No. 19, Sept. Term, 1999.**

Court of Appeals of Maryland.

June 8, 2000.

60

Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Com'n of Maryland, for petitioner.

George Nilson, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Bar Counsel, on behalf of the Attorney Grievance Commission (AGC), petitioner, and at the direction of the Review Board, filed a petition with this Court for disciplinary action against Thomas J. Mooney, Esquire, respondent,[1] pursuant to Maryland Rule 16–709(a).[2] In the petition, Bar Counsel alleges violations of Rules 1.1, 1.3, 1.4, 5.1, 5.3, 7.1, 8.1, and 8.4 of the Maryland Rules of Professional Conduct (MRPC) and Maryland Rule 16–812 based on four separate complaints filed against respondent. This Court referred the matter to the Honorable Michael D. Mason of the Circuit Court for Montgomery County to conduct an evidentiary hearing and make findings of fact and conclusions of law in accordance with Maryland Rules 16–709(b) and 16–711(a).[3] After an evidentia-

---

**1.** Mr. Mooney was admitted as a member of the Bar of this Court on December 19, 1990. He maintains an office for the practice of law at 818 Roeder Road, Suite 409, Silver Spring, Maryland 20910.

**2.** Rule 16–709(a) states that: "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

**3.** Rule 16–709(b) states that the "Court of Appeals by order may direct that the charges be transmitted to and heard in any court and shall

ry hearing, Judge Mason found, by clear and convincing evidence, that respondent violated MRPC 1.1, 1.3, 1.4, 5.1, 5.3, 8.1, and 8.4. Respondent filed in this Court extensive exceptions to the findings of facts and conclusions of law made by Judge Mason. As we shall indicate, we accept some of the court's findings of facts and proposed conclusions of law, and do not accept certain of its findings and conclusions. We shall suspend respondent indefinitely, with permission to apply for readmission after ninety days. Termination of respondent's suspension is subject to respondent engaging, at his expense, a monitor acceptable to Bar Counsel, who will oversee respondent's practice of law and respondent's accounting for funds entrusted to him for a period of two years, and who will provide Bar Counsel monthly reports for one year and quarterly reports thereafter.

## I. Facts

This disciplinary action arose out of the complaints of four of Mr. Mooney's clients: Ms. Francis L. Greenhill, Ms. Betty Johnson, Mr. Melvin Postell, and Ms. Dee Dee Cunningham. The court heard testimony from Ms. Greenhill, Ms. Johnson, Ms. Cunningham, Mr. Mooney, Ms. Natalija Djurickovic,[4] and Mr. Dennis F. Biennas.[5] The petition came before the court on December 1, 1999. From the evidentiary record made below, Judge Mason made findings of fact with respect to each complaint.

---

designate the judge or judges to hear the charges and the clerk responsible for maintaining the record in the proceeding."

Rule 16–711(a) states that a "written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

**4.** Ms. Natalija Djurickovic, Esquire, was employed by respondent as an associate attorney from approximately April 1997 to July 1998. During her employment with respondent, she was primarily involved in trying criminal cases in Prince George's County.

**5.** Mr. Biennas is an investigator with the Attorney Grievance Commission (Bar Counsel). He was assigned to investigate the complaints against respondent.

## Complaint of Francis L. Greenhill

In response to his letter of solicitation,[6] respondent was retained by Ms. Greenhill in the latter part of October 1997 to represent her in a criminal case set for January 22, 1998 in the District Court of Maryland, sitting in Prince George's County. She paid respondent a fee of approximately $325.00. Ms. Greenhill met with respondent in November to discuss the facts of her case. Respondent entered his appearance in Ms. Greenhill's case on November 7, 1997. Subsequently, Ms. Greenhill attempted to call respondent on the telephone on numerous occasions. The record reflects that respondent neither took nor returned any of her calls.

Respondent failed to appear as counsel for Ms. Greenhill at the January 22, 1998 trial. That day, at the direction of the court, Ms. Greenhill telephoned respondent's office and was told that he was not there. When she returned to court, she decided to proceed *pro se*. The case was dismissed because no witnesses appeared to testify against her.

Several weeks later, while Ms. Greenhill was in court on an unrelated matter, she saw respondent heading into court with another client. She confronted him concerning his failure to appear at her trial and requested her money back. He offered her no explanation for his failure to appear, but told her to call his office to inquire about getting a refund. She thereafter called his office numerous times, but was never able to contact respondent. On one occasion, respondent's receptionist told Ms. Greenhill that respondent no longer worked at that office. Ms. Greenhill then filed a complaint with Bar Counsel. Approximately two months after Bar Counsel contacted respondent concerning Ms. Greenhill's complaint, her $325.00 fee was refunded and she received a letter of apology from respondent.

---

**6.** His letters to Ms. Greenhill, Mr. Postell, and Ms. Cunningham all stated the same language: "You need someone who will fight for your rights in the court system. I am such a person," and "We stand by your side and ensure your rights are not ignored."

Ms. Djurickovic testified that she was hired by respondent in 1997 for the primary purpose of handling cases in Prince George's County. Although the majority of her cases were in the District Court, she occasionally handled circuit court cases. She further testified that respondent had neither discussed the Greenhill case with her nor assigned it to her. Both Ms. Djurickovic and respondent described their general process of "assigning" cases. Ms. Djurickovic was assigned a case when she was given the case file by respondent or the case file was otherwise left for her by respondent in the office. This usually occurred approximately a week in advance of trial.

During the investigation of Ms. Greenhill's complaint, respondent told an investigator for petitioner that because Ms. Djurickovic handled most of his firm's cases in Prince George's County, and that Ms. Greenhill's case was in Prince George's County, and he could not find Ms. Greenhill's file, he assumed that he had assigned the case to her. He conceded, however, that he may have neglected to assign the case. Additionally, he offered no explanation as to: (1) why he neither received nor returned Ms. Greenhill's calls and (2) why his receptionist would have told Ms. Greenhill that he no longer worked at his office. Finally, he also told Mr. Biennas, the investigator, that when Ms. Djurickovic arrived in court, Ms. Greenhill's case had already been "nolle prossed" when in fact the case actually had been dismissed.

Based upon the aforementioned findings of fact, Judge Mason concluded that respondent violated the following rules in his representation of Ms. Greenhill:

1. MRPC 1.1 (Competence) by failing to provide competent representation to Ms. Greenhill;

2. MRPC 1.3 (Diligence) by failing to act with reasonable diligence in representing Ms. Greenhill;

3. MRPC 1.4 (Communication) in failing to respond to the client's inquiries after his failure to appear for a trial and by failing to appear at the trial itself;

4. MRPC 8.1 (Bar admission and disciplinary matters) by telling the bar investigator that the case had been assigned to an associate when the evidence indicated that no

such assignment took place and respondent was aware of that fact when he made that statement; and

5. MRPC 8.4 (Misconduct) by attempting to mislead the bar investigator by suggesting that the case had actually been assigned to an associate, by failing to appear for trial, and by falsely representing to the court at the disciplinary hearing that he could not remember what happened in this case because he did not have a file.[7]

## Complaint of Betty Johnson

On or around September 1997, respondent was retained by Ms. Johnson to represent her minor son, Clifton Haggins, in the Circuit Court for Prince George's County, in connection with the criminal charge of attempted murder. Ms. Johnson specifically asked respondent about filing a petition to waive the jurisdiction of the circuit court (a reverse waiver) and he agreed to do so as part of his representation. Such a petition was never filed by respondent.

After retaining respondent, Ms. Johnson attempted to contact him by telephone on a number of occasions. The record reflects that on at least one occasion, she was able to speak with him and during their conversation he assured Ms. Johnson that he would go to the jail to visit her son, who was incarcerated. Clifton Haggins informed his mother, Ms. Johnson, that respondent never came to visit.

Ms. Djurickovic testified that respondent assigned Mr. Haggins' case to her in January of 1998.[8] A line entering her appearance was filed in the case on October 21, 1997; howev-

---

**7.** Judge Mason also determined that respondent did not violate MRPC 5.3 (Responsibilities regarding nonlawyer assistants) and 7.1 (Communications concerning a lawyer's services) in the representation of Ms. Greenhill. Concerning MRPC 5.3, the court found that the staff gave the client's messages to respondent; he simply failed to respond. Concerning MRPC 7.1, the court found that the statements contained in the letter were not false or misleading at the time that they were made. There was no evidence before the court that respondent did not intend to live up to the promise of his letter, even though he did not.

**8.** Respondent offered conflicting statements as to when he assigned the case to Ms. Djurickovic. He testified that he had assigned the case to

er, she did not sign it and testified that she was unaware that it had been filed. She also testified that when she was assigned the case, there was no file.[9] As such, she had to go to court to get information concerning the case. While conducting this research, she noticed that no motions had been filed on Mr. Haggins behalf. According to the docket entries, she filed standard motions to suppress on February 3, 1998. She also testified that at no time did respondent inform her that Mr. Haggins was a minor at the time of his alleged crime.[10]

Ms. Djurickovic further testified that one of the first things she noticed when reviewing the case file was that a court date had been set on a day when she already had a trial scheduled in Frederick County. She told respondent that because of this prior commitment she would not be able to represent Mr. Haggins. In response to this information, respondent said that he would take care of the matter and asked only that she have the motions continued to the trial date so he would only have to make one trip to court. The docket entry shows that, on March 6, 1998, the motions were continued to the trial date.

Ms. Johnson testified that she contacted respondent approximately a week prior to her son's trial date, and at that time he informed her that Ms. Djurickovic would be handling her son's case. Ms. Johnson got Ms. Djurickovic's phone number from respondent, called her, and left a message at her office.[11] When she did not hear from Ms. Djurickovic, Ms. Johnson made several calls to her pager number, which the office had

---

her early on and thought she was doing what was necessary; however, in his answer to the petition, he admits he did not assign the case to her until late February of 1998. Both statements were rejected by the hearing court.

9. Respondent denies this fact. The court believed the testimony of Ms. Djurickovic.

10. The record reflects that Mr. Haggins was fifteen years old at the time of the alleged crime and that he was being tried as an adult.

11. It appears that Ms. Djurickovic maintained a separate office from that of respondent.

given her. After not getting a response, she called the pager one final time and put the numbers 911 along with the call back number.[12] During this time, Ms. Djurickovic was involved in taking depositions in an unrelated matter. During a recess from the depositions, she responded to Ms. Johnson's last page. They briefly discussed Mr. Haggins's case. It was the one and only conversation between the two women. On March 17, 1998, in response to the facts outlined, *supra*, Ms. Johnson notified the court that she was dismissing respondent and seeking other counsel. On March 20, 1998, just three days before trial, new counsel entered their appearance in the case.

Based upon the aforementioned findings of fact, Judge Mason concluded that respondent violated the following in his representation of Ms. Johnson:

1. MRPC 1.1 in failing to represent Mr. Haggins in a competent manner;

2. MRPC 1.3 in failing to act either diligently or promptly in representing his client;

3. MRPC 1.4 in failing to meet with his client, or otherwise discuss the case with Mr. Haggins or Ms. Johnson for a period of over four months; and

4. MRPC 8.4 in accepting Mr. Haggins' case for representation and thereafter taking no action to provide representation and further misrepresenting to his client's mother that he was taking such efforts. Judge Mason further found that respondent attempted to mislead the court by testifying in the court hearing that he believed he had given the case to Ms. Djurickovic in a timely fashion and reasonably believed that she was taking necessary action.[13]

---

**12.** Putting 911 with a regular number is a common way to let page recipients know that the call concerns an urgent matter that requires an immediate call back. Evidently, Ms. Johnson felt that because her son was going to trial to face attempted murder charges as an adult in a week and that she had not yet gotten a chance to speak to the attorney representing him, there was an emergency.

**13.** Judge Mason also determined that respondent did not violate MRPC 5.3 (Responsibilities regarding non-lawyer assistants) in the representa-

### Complaint of Melvin Postell

In response to his letter of solicitation, respondent was retained by Mr. Postell, on or about March 26, 1998, to represent him at a trial scheduled for March 30, 1998 before the District Court, in Prince George's County. Mr. Postell paid a fee of $600.00 for the representation. On the day of the trial, an unknown member of respondent's staff told Mr. Postell over the telephone that he did not have to appear at the trial.[14] In reliance on this information, Mr. Postell did not appear. Neither respondent nor any representative from his office appeared for Mr. Postell's trial.

Shortly after March 30, 1998, Mr. Postell learned that a bench warrant had been issued for his arrest. He called respondent and was put through to Ms. Djurickovic. She told Mr. Postell to turn himself in to the police, to which Mr. Postell replied that their office should post any necessary bond. Ms. Djurickovic explained to Mr. Postell that she would have to discuss that matter with respondent. When she later discussed the issue with respondent, he said he would take care of the matter. Subsequently, Mr. Postell turned himself in to the authorities. Respondent filed a motion to rescind the bench warrant.

Concerning his failure to appear, respondent indicated to the investigator for Bar Counsel, Mr. Biennas, that he had assigned the case to Ms. Djurickovic. Ms. Djurickovic testified that she had never been assigned Mr. Postell's case and only became aware of it after the failure to appear, when Mr. Postell's call was forwarded to her. Because of this testimony, and because (1) the trial was set for March 30, 1998 and, according to the exhibits, respondent did not enter his appearance in the case until March 26, 1998; and (2) respondent, not Ms. Djurickovic, drafted the motion to rescind the bench

---

tion of Ms. Johnson. There is no evidence that the staff failed to put through her calls to respondent. He simply did not return the calls.

**14.** It is not clear from the evidence which of respondent's staff members told Mr. Postell not to appear. Respondent denies that he authorized any such statement to be made.

warrant, Judge Mason found that respondent gave Mr. Biennas false information.

Based upon the aforementioned findings of fact, Judge Mason concluded that respondent violated several of the Maryland Rules of Professional Conduct in his representation of Mr. Postell.

1. The court found that respondent violated MRPC 1.1 and 1.3 by failing to provide competent and diligent representation to Mr. Postell. He found that respondent not only failed to appear for trial, he failed to do anything except make a half-hearted effort to have the bench warrant rescinded. He did not include the most important piece of information—that his client was told by someone in respondent's office that he did not have to be in court that day.

2. It found that he violated MRPC 1.4 by failing to keep Mr. Postell informed about the status of his case.

3. It found that he violated MRPC 5.3 (Responsibilities regarding nonlawyer assistants). The court found that respondent failed to make any reasonable efforts to ensure that his administrative staff would accurately inform the clients of the status of their cases. Only in the absence of any such reasonable efforts could a situation arise where a member of his staff would tell a client that he did not have to appear for trial.[15]

4. It also found that he violated MRPC 8.1 because respondent falsely informed the bar investigator that he had assigned the case to his associate. The court found that, at best, respondent intended to assign the case, but knew by the time he spoke to the bar investigator that Ms. Djurickovic had never gotten the case.

5. Finally, Judge Mason found that respondent, by reason of his actions described above, violated MRPC 8.4. Additionally, as has been noted, according to the court, respondent attempted to deceive the bar investigator regarding his han-

---

**15.** By March 30, 1998, the trial date of this case, respondent was well aware of his office's administrative problems revealed in the Greenhill case.

dling of the case. Further, the judge found that while it may have been technically correct in the motion to rescind the bench warrant to assert that the defendant did not know that he had to appear in court, the statement was misleading. Judge Mason reasoned that if counsel had been candid with the hearing court and informed the court that the client had been erroneously informed not to appear, the chances of having the bench warrant recalled may have been substantially higher. Instead, counsel simply stated that the client did not know he had to be in court without explanation.

In addition to finding that respondent misled the court in the way he phrased the motion to rescind the bench warrant in the Postell case, Judge Mason found that respondent was not candid when he testified in the disciplinary court hearing itself, that he could not recall what his investigation had revealed in respect to this case. He had to have found out why the client failed to appear before he could file the motion in the Postell case to rescind the bench warrant. Judge Mason reasoned that, because respondent was already being investigated by Bar Counsel at that time in the Greenhill matter, it was inconceivable that respondent would have discovered and then forgotten what he had learned regarding Mr. Postell's case.[16]

### Complaint of Dee Dee Cunningham

Respondent was retained by Ms. Cunningham to represent her in connection with an assault trial scheduled for May 28, 1998. Ms. Cunningham insisted that she was innocent and presented respondent with a list of witnesses who had observed the fight from which the charges arose, who she asserted would testify on her behalf. Additionally, she told respondent of the existence of certain medical records that would corroborate her version of what had occurred. After

---

16. Judge Mason determined that respondent did not violate MRPC 5.1 (Responsibilities of a partner or supervisory lawyer), and MRPC 7.1 in the representation of Mr. Postell. Concerning MRPC 5.1, he found respondent was the only lawyer involved in this case. Concerning MRPC 7.1, see note 7, *supra*.

the initial meeting, but before the trial, Ms. Cunningham sent a fax to respondent reminding him of the witnesses and medical records. Moreover, before the trial, she made repeated unsuccessful efforts to reach respondent.

On the day of the trial, respondent did not appear. Instead, Ms. Djurickovic arrived late. Ms. Cunningham had no prior contact with Ms. Djurickovic. Although Ms. Djurickovic had a file, she had received no information about the witnesses or the medical records from respondent. Ms. Djurickovic testified that respondent had given this case to her on the afternoon of the day before trial. It was not until her initial discussion with Ms. Cunningham that Ms. Djurickovic learned that Ms. Cunningham had requested that respondent obtain medical records and subpoena witnesses. Realizing that neither task had been performed, Ms. Djurickovic recommended that the case be continued in order to secure the witnesses and obtain the medical records. However, Ms. Cunningham elected to go forward with the trial.[17] Ms. Cunningham was convicted, but offered a probation before judgment. She refused the probation before judgment in order to preserve her appeal rights. Accordingly, a guilty verdict apparently was entered against her. After an appeal was noted, Ms. Cunningham promptly fired respondent and his firm.

Respondent testified on December 1, 1999 that he could not locate his file and was therefore unsure as to how the case was handled; however, in a letter to Bar Counsel dated September 15, 1998,[18] concerning Ms. Cunningham's complaint, he wrote: "I reviewed the file and spoke to my associate Ms. Djurickovic

---

17. Ms. Cunningham swore out a cross-warrant against the alleged victim, which, as of the time of the trial, had not been served. The Prince George's County sheriffs told Ms. Cunningham that they would only serve the warrant if the case proceeded to trial and the victim identified himself on the witness stand. Both Ms. Cunningham and Ms. Djurickovic testified that this happened.

18. Respondent's letter was in response to Bar Counsel's third letter about the complaint. Bar Counsel wrote four letters to respondent concerning Ms. Cunningham's complaint (dated August 6, 1998, September 1, 1998, September 14, 1998, and September 17, 1998). This

concerning this matter." Judge Mason found it difficult to believe that respondent had simply forgotten what he learned when he spoke to his associate about a case that Bar Counsel was investigating. Additionally, respondent testified that he could not dispute that he had been given the names of witnesses and that he had failed to subpoena them. He also conceded that it was possible that he gave Ms. Djurickovic the file the night before the trial. Based upon the aforementioned findings of fact, Judge Mason concluded that respondent violated the following in his representation of Ms. Cunningham:

1. MRPC 1.1 by failing to provide competent representation due Ms. Cunningham;

2. MRPC 1.3 by failing to act with reasonable diligence and promptness in representing Ms. Cunningham;

3. MRPC 1.4 in failing to respond to any of Ms. Cunningham's phone calls or correspondence prior to the trial and in failing to respond to her letter of June 12, 1998,[19] following the trial;

4. MRPC 5.1 because the system set up by respondent to provide files to Ms. Djurickovic for the Prince George's County cases was woefully inadequate, it was not reasonably designed to make sure that Ms. Djurickovic received the files in a timely fashion and to ensure that she received notice that she had been assigned to a given case; and

5. MRPC 8.4 by virtue of the violations of the MRPC as set out, *supra;* by failing to respond to Bar Counsel's request for information regarding Ms. Cunningham's complaint; and by attempting to mislead the court by testifying that he could not recall what had occurred in this case.[20]

---

letter was respondent's only reply. Bar Counsel sent the September 17th letter to address the previously raised questions. Respondent never replied.

19. This letter dismissed respondent as Ms. Cunningham's counsel and discussed a possible overpayment.

20. Judge Mason determined that respondent did not violate MRPC 5.3 and 7.1 in the representation of Ms. Cunningham. *See supra* note 7.

## II. Discussion

As we stated in *Attorney Grievance Commission v. Gavin,* 350 Md. 176, 189, 711 A.2d 193, 200 (1998):

> This Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709b; *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. The "hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). Accordingly, the ultimate decision as to whether a lawyer has violated professional rules rests with this Court. *Garland,* 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995).

## Respondent's Exceptions[21]
## Complaint of Francis L. Greenhill

Judge Mason found that respondent was in violation of MRPC 1.1, 1.3, 1.4, 8.1, and 8.4 for his actions conducted in the representation of Ms. Greenhill. Respondent excepts to the findings that he violated MRPC 1.1, 1.4, 8.1, and 8.4.

---

**21.** Respondent excepts to numerous irrelevant facts that are not material to the outcome of this matter. As such, we only address the exceptions that either refer to specific rule violations or that are relevant to our holding.

### a. MRPC 1.1 (Competence), MRPC 1.3 (Diligence), & MRPC 1.4 (Communication)

■ While respondent concedes that no lawyer from his office appeared at Ms. Greenhill's trial and admits that such practice may be a violation of MRPC 1.3, he argues that it does not make out a clear violation of MRPC 1.1. We disagree. MRPC 1.1 states:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Respondent failed to provide Ms. Greenhill with *any* representation, much less *competent* representation. Instead, he left Ms. Greenhill to fend for herself when her day in court arrived. When the court directed that she call her attorney, she called his office and was told that he was not there. As to a specific case, such a complete failure of representation is the ultimate incompetency.

■ We have held that it is unacceptable for an attorney to appear in court for a trial or other proceeding unprepared, and that such practice may constitute a violation of MRPC 1.1. *See Attorney Grievance Comm'n v. Ficker*, 349 Md. 13, 39–40, 706 A.2d 1045, 1057–58 (1998) (*Ficker II* ). An attorney who does not even show up for the court appearance violates the same rule, absent sufficient explanation. As we said in *Ficker II*, 349 Md. at 39–40, 706 A.2d at 1057–58:

The Comment to Rule 1.1 explains, in that regard:

"Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake...."

The requirement of adequate preparation has long been recognized as part of a lawyer's responsibility to provide

competent representation, and it is not without significance that, in the current Code of Professional Responsibility embodied in the MLRPC, the duty to provide competent representation is given "the place of honor as the first ingredient in the lawyer-client relationship." 1 GEOFFREY C. HAZARD, JR. AND W. WILLIAM HODES, THE LAW OF LAWYERING, 2d ed. § 1.1:101 (1997). Former DR 6–101(A)(2) precluded a lawyer from handling a matter "without preparation adequate in the circumstances," and the failure to make a proper investigation of the facts of a case prior to trial has led to discipline. *See In Re Conduct of Chambers,* 292 Or. 670, 642 P.2d 286, 291 (1982); *People v. Felker,* 770 P.2d 402 (Colo.1989). *See also Lamar v. American Finance System of Fulton Cty., Inc.,* 577 F.2d 953, 955 (5th Cir.1978), noting the duty in a non-disciplinary context.

Respondent did not adequately represent Ms. Greenhill because he failed to appear for her trial. When Ms. Greenhill retained respondent in October of 1997 for her criminal trial set for January 22, 1998, clearly it was her intention to have him represent her in trial that day. His failure to appear in court for his client's trial is incompetent representation.

■ Respondent acknowledges that his failure to appear at Ms. Greenhill's trial may be a violation of MRPC 1.3. MRPC 1.3 states in relevant part that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." He excepts, however, to the court's finding that he violated MRPC 1.4 in "failing to respond to the client's inquiries after his failure to appear for a trial" and "by failing to appear at the trial itself." MRPC 1.4 states:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

We overrule his exception and hold that respondent's actions violated both MRPC 1.3 and 1.4. As we stated in *Attorney*

*Grievance Commission v. Montgomery,* 296 Md. 113, 120, 460 A.2d 597, 600 (1983) (*Montgomery I* ), the "lack of communication with one's client, for whatever reason, is a matter of continuing concern to the public. Moreover, this Court has consistently regarded neglect and inattentiveness to a client's interests to be [an ethical violation] warranting the imposition of some disciplinary sanction." *Montgomery I* involved five different cases in which the attorney repeatedly failed to return communications from clients and neglected to file timely claims on their behalf. The sixty-day suspension in *Montgomery I* apparently did not deter the attorney; he later was found to have neglected three more cases in which he also failed to communicate with his clients. *Attorney Grievance Commission v. Montgomery,* 318 Md. 154, 567 A.2d 112 (1989) (*Montgomery II* ). This second set of violations led to his disbarment.

In *Attorney Grievance Comm'n v. Ficker,* 319 Md. 305, 572 A.2d 501 (1990) (*Ficker I* ), we disciplined an attorney who in two separate cases neglected to file his appearance pursuant to Maryland Rule 4–214(a) or to appear in court on behalf of his clients. Mr. Ficker argued before this Court that under former Code of Professional Responsibility (Code) Disciplinary Rule (DR) 6–101(A)(3),[22] a single failure to appear did not amount to "neglect" of a legal matter. He based his argument on the comment to DR 6–101. We noted, however, that we interpreted DR 6–101 more broadly than the comment. In addition, we had already held in *Montgomery I* that a single failure to appear could constitute a violation of DR 6–101(A)(3). Thus, Mr. Ficker's failure to appear in each case constituted "neglect." *Id.* at 311–12, 572 A.2d at 504.

---

**22.** The Code of Professional Responsibility was replaced by the current Maryland Rules of Professional Conduct on April 15, 1986, effective January 1, 1987. DR 6–101(A)(3) provided: "A lawyer shall not ... [n]eglect a legal matter entrusted to him." The comment to MRPC 1.3 cites DR 6–101 as its earlier Code of Professional Responsibility counterpart, although the language of the two rules differ. The comment to MRPC 1.4 notes that the rule has no counterpart in the Code of Professional Responsibility. The comment, however, does state that DR 6–101 and MRPC 1.4 are analogous.

In the present case, Judge Mason found that respondent had violated MRPC 1.3 for his failure to appear, and MRPC 1.4 for failing to appear as well as his subsequent failure to respond to the attempted communications by Ms. Greenhill. The comment to MRPC 1.3 states in relevant part, "[u]nless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client." The comment to MRPC 1.4 provides that "[e]ven when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter." The record reflects that after their initial meeting and his filing of appearance, respondent had no contact with Ms. Greenhill until she happened to see him heading into court with another client several weeks after her trial. Thus, as of November 1997, respondent effectively ceased all communications with Ms. Greenhill regarding the status of her case or what actions he might take on her behalf. Not only did he not answer or return her telephone calls, but he failed to appear at her scheduled trial. It was only by a chance later meeting that Ms. Greenhill was able to confront respondent and request that he refund her money. During their exchange, respondent continued to evade Ms. Greenhill by offering no explanation for his actions and telling her to call his office to inquire about getting a refund. When she thereafter called his office numerous times, she was never able to contact respondent. On one occasion, respondent's receptionist even told Ms. Greenhill that respondent no longer worked there.

Only after Ms. Greenhill filed a complaint and Bar Counsel contacted respondent concerning that complaint, was her $325.00 fee refunded and a letter of apology received. Respondent clearly did not carry through all matters undertaken for Ms. Greenhill; he did not even appear at her trial. Additionally, when she attempted to collect the refund, to which she was clearly entitled, respondent not only failed to communicate with Ms. Greenhill, but an inference can be drawn from the evidence that he avoided her. Respondent was forthcoming with said refund and apology only after Ms.

Greenhill's complaint to the Bar Counsel. Respondent clearly violated MRPC 1.3 and 1.4.

**b. MRPC 8.1 (Bar admission and disciplinary matters)**

■ Respondent excepts to the finding by Judge Mason that he lied to or deceived the bar investigator, Mr. Biennas, when he indicated that the Greenhill case had been assigned to an associate, Ms. Djurickovic. We agree with respondent and shall grant this exception. Although Judge Mason ultimately concluded that respondent's statements to the investigator were not accurate, the evidence does not support by clear and convincing evidence a finding that respondent knew at the relevant time that the files had not been physically given to Ms. Djurickovic or that he intended to mislead the investigator.

MRPC 8.1 states in relevant part:

[A] lawyer ... in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

■ In Maryland, a finding of deceit and misrepresentation in a disciplinary action must be found to be intentional. *Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990) (holding that it is necessary "to establish that the dishonesty, fraud, deceit or misrepresentation is intentional"). Thus, in order to establish its case against respondent, Bar Counsel is required to prove with clear and convincing evidence that respondent's supposed false statements were made with the knowledge that such statements were false when he made them. *See Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 470, 671 A.2d 463, 474 (1996) ("The burden is on Bar Counsel to establish the allega-

tions by clear and convincing evidence."); *Attorney Grievance Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514 (1994) ("To be sustained, the findings of fact of a hearing court must be supported by clear and convincing evidence."). We have defined the clear and convincing evidence standard as "more than a preponderance of the evidence and less than evidence beyond a reasonable doubt...." *Berkey v. Delia,* 287 Md. 302, 320, 413 A.2d 170, 178 (1980) (quoting *Whittington v. State,* 8 Md.App. 676, 679 n. 3, 262 A.2d 75, 77 n. 3 (1970)). We expounded further:

> The requirement of "clear and convincing" or "satisfactory" evidence does not call for "unanswerable" or "conclusive" evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance but not beyond a reasonable doubt. It has also been said that the term "clear and convincing" evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence.

*Berkey,* 287 Md. at 320, 413 A.2d at 178 (quoting 30 Am.Jur.2d *Evidence* § 1167).

In the Greenhill case, the evidence does not support a finding that respondent violated MRPC 8.1 by telling the bar investigator that he believed the case had been assigned to the associate. It is respondent's contention that he told the bar investigator that he believed that the Greenhill case had been assigned to Ms. Djurickovic based on his knowledge that ninety to ninety-five percent of the cases in his office, which were pending in Prince George's County, were handled by Ms. Djurickovic, that Ms. Greenhill's case was in Prince George's

County, and he could not find Ms. Greenhill's file. In other words, he assumed that he had assigned the case to her and gave an answer that reflected that assumption. Judge Mason said that:

> it [is] inconceivable that [respondent] could have investigated this failure to appear, as a result of the investigation hired an office manager (and fired his secretary according to his letter to bar counsel), and now can't recall what his investigation revealed! Instead, the [c]ourt concludes that [respondent] has taken this position because his investigation revealed that Ms. Djurickovic had never received this file as she testified. This means he made a false representation to the investigator for bar counsel when he told him that he believed the case had been assigned to the associate, which he does not want to admit. Although [respondent] denies making such a statement to bar counsel, the [c]ourt finds that he did.

This conclusion based on the evidence presented to the trial court does not meet the standard of clear and convincing evidence. Judge Mason bases his conclusion, in large part, on Mr. Biennas's testimony that "[h]e did tell me that that case was assigned to somebody else, an associate in his office." This testimony was based on a conversation Mr. Biennas had with respondent one year and six months earlier. Respondent explained that he told Mr. Biennas in general terms that the case had been assigned to Ms. Djurickovic. In dealing with cases set in Prince George's County, respondent acted under the assumption that, absent unusual circumstances or any recollection to the contrary, such cases were handled by Ms. Djurickovic. This is further evidenced by respondent's testimony relative to the Greenhill case that "since it was a Prince George's County case, Ms. Djurickovic would probably have handled it" and his subsequent testimony acknowledging that he had no specific knowledge that she did, in fact, handle it. The evidence presented by Bar Counsel is not so clear and convincing to lead one to conclude that respondent intended to mislead the bar investigator. We hold that Judge Mason erred in finding that respondent made intentional false repre-

sentations to the bar investigator. We therefore grant respondent's exception to the finding that he violated MRPC 8.1.

### c. MRPC 8.4

Respondent excepts to the finding of the trial court that he lied to or deceived the bar investigator, Mr. Biennas, when he indicated that the Greenhill case had been assigned to an associate, Ms. Djurickovic, and that he falsely represented to the court at the hearing that he could not remember what happened in the case because he did not have a file. We agree with respondent, overrule the finding of the trial court, and grant this exception. However, respondent does not except to the finding that he violated MRPC 8.4(d) by failing to appear for trial. We hold that respondent did violate MRPC 8.4(d) when considering that portion of the finding.

MRPC 8.4 states in relevant part:

> It is professional misconduct for a lawyer to:
>
> . . . .
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice . . . .

We first address the trial court's finding that respondent violated MRPC 8.4(c) by lying to or deceiving the bar investigator, Mr. Biennas, when he indicated that the Greenhill case had been assigned to an associate, Ms. Djurickovic. As we stated, *supra*, Bar Counsel has not proven by clear and convincing evidence that respondent intended to mislead the bar investigator as to this allegation. Accordingly, we grant respondent's exception concerning his conversation with the bar investigator and overrule the hearing court's finding on that issue.

We next address Judge Mason's finding that respondent violated MRPC 8.4(c) by falsely representing to the court at the hearing that he could not remember what happened in this case because he did not have a file. We have held that conduct before the hearing court at an attorney

disciplinary hearing cannot be the basis for a separate finding of a violation of MRPC 8.4 in the same proceeding on the charges already filed. We addressed this exact issue in *Attorney Grievance Commission v. Goldsborough*, 330 Md. 342, 361–62, 624 A.2d 503, 512 (1993):

> Bar Counsel also contends that Judge Simpson's finding that Goldsborough was "deliberately untruthful" in his testimony before the circuit court necessitated a finding that he violated Rule 8.4(c). While Goldsborough's conduct before the circuit court might be relevant in determining an appropriate sanction, it does not permit a separate finding of a Rule 8.4(c) violation. The charges brought against Goldsborough were based on his pattern of conduct occurring *before* the petition for disciplinary action was filed in this Court. Due process considerations dictate that attorneys are entitled *to notice of the charges against them when* disciplinary proceedings begin. [*In re* ] *Ruffalo*, 390 U.S. [544,] 550–51, 88 S.Ct. [1222,] 1226, 20 L.Ed.2d [117,] 122 [ (1968) ]. While the charges are not necessarily fixed until a petition is docketed in this Court, once the petition is docketed, the charges become fixed. *The existing charges cannot be expanded to include an attorney's post-charge conduct during the circuit court hearing itself.* Judge Simpson's findings regarding Goldsborough's untruthfulness before the circuit court might serve as the basis for subsequent formal charges, but only after Goldsborough is provided adequate notice. Judge Simpson was correct in not finding a violation of Rule 8.4(c) based on Goldsborough's post-charge deliberate untruthfulness at the circuit court hearing. We therefore overrule Bar Counsel's exception. [Footnote omitted.] [Second emphasis added.]

Clearly, in respect to charges and allegations filed in a specific proceeding, the Disciplinary Rules are designed to address only possible violations, which arise out of an attorney's conduct prior to the disciplinary hearing in that proceeding in the circuit court. Accordingly, we grant respondent's exception concerning his hearing testimony and overrule the court's finding on this point.

Third, we address the court's finding that respondent violated MRPC 8.4 by failing to appear at Ms. Greenhill's trial. Failure to represent a client in an adequate manner violates MRPC 8.4(d). We held in *Ficker I,* 319 Md. at 315, 572 A.2d at 506, that tardiness or absence from a trial may violate former Code DR 1–102(A)(5), which contained virtually the same text as current MRPC 8.4(d). As we explained:

> Ficker knew precisely when Daley's trial was to be held and had agreed to be there. His negligent failure to be present at that trial interfered with the orderly disposition of the court's docket; a trial set for 9:00 a.m. had to be postponed until afternoon.

> We have held that failure to be punctual in a scheduled court appearance is "not only detrimental to the administration of justice but also constitute[s] discourteous conduct degrading to the tribunal." *Attorney Griev. Comm'n v. Howard,* 282 Md. 515, 523, 385 A.2d 1191, 1196 (1978). We have held that an attorney who fails to appear punctually at a trial is guilty of a contempt of court. *Kandel v. State,* 252 Md. 668, 250 A.2d 853 (1969). Misconduct of that sort is a contempt of court because it interferes with the conduct of court business.

> > [A]n attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt. The attorney's absence from the courtroom is immediately cognizable by the judge and intrudes upon the operation and dignity of the court.

> *Murphy v. State,* 46 Md.App. 138, 146, 416 A.2d 748, 753 (1980).

> If being late for a scheduled court appearance interferes with the administration of justice, it is obvious that being altogether absent from a scheduled trial does so as well. As in the case of neglect, the circumstances surrounding the failure to appear and the actual consequences of that failure are matters that go to the question of sanction. [Alterations in original.]

As we discussed, *supra,* respondent concedes that no one from his firm made an appearance to represent Ms. Greenhill on her January 22, 1998 trial date. Respondent therefore violated MRPC 8.4(d).

### Complaint of Betty Johnson

The trial court found that respondent was in violation of MRPC 1.1, 1.3, 1.4, and 8.4 for his actions conducted in the representation of Clifton Haggins. Respondent was retained to represent Clifton Haggins, a minor, by his mother, Ms. Johnson. Mr. Haggins was facing attempted murder charges in the Circuit Court for Prince George's County. Respondent excepts to the findings that he violated MRPC 1.1, 1.4, and 8.4.

### a. MRPC 1.1 & 1.3

Respondent acknowledges that his office failed to file a reverse waiver motion as originally discussed with Ms. Johnson. He contends that this failure may constitute a violation of MRPC 1.3, but not a violation of MRPC 1.1. He argues that because the reverse waiver motion that was eventually filed was unsuccessful,[23] not enough facts exist to establish whether such a motion, if timely, had a reasonable possibility of success. We disagree. The fact that the reverse waiver petition that was ultimately filed was unsuccessful generally has no bearing on whether respondent's failure to file it constituted incompetence. Respondent's failure, without explanation, to file a reverse waiver motion in a case in which a minor, who was fifteen at the time of the alleged offense, was facing attempted murder charges as an adult, under the circumstances of the case, constitutes a violation of both MRPC 1.1 and 1.3. This is especially so because his client's mother asked for such a motion to be filed and respondent told her that he was going to file it. As we said in *Kemp,* 335 Md. at 9–10, 641 A.2d at 514:

An attorney will be held to the ethical and performance standards of his or her profession. *Atty. Griev. Comm. v.*

---

**23.** The reverse waiver motion was eventually filed by new counsel.

*Martin,* 308 Md. 272, 518 A.2d 1050 (1987). The quality of a lawyer's representation is measured by the degree of legal knowledge, skill, thoroughness, and preparation the lawyer brings to the representation. *See* Rule 1.1. Whether the representation the lawyer gives is incompetent or is merely careless or negligent depends upon what reasonably is necessary in the circumstances, *i.e.* the facts and circumstances of the particular case. Moreover, in determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include:

> the relative complexity of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question.

Rule 1.1, comment, at 477.

Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners, including adequate preparation in the circumstances. Rule 1.1.

Looking at the facts and circumstances of this case, respondent was not merely careless or negligent; holding him to the standard of his profession, he was clearly incompetent. He was neither thorough nor adequately prepared in respect to his representation of Mr. Haggins. First, he was specifically asked by his client's mother about filing a petition to waive the jurisdiction of the circuit court. Second, he told her that he would file the petition as part of his representation. Third, he assigned the case to an associate without telling her that the client was a minor, that there had been a request that he file a petition for reverse waiver, and that he had agreed that he would file the petition. Finally, he neither filed the petition nor explained why not. As we noted in *Attorney Grievance Commission v. Brown,* 308 Md. 219, 231–32, 517 A.2d 1111, 1117 (1986), individual errors may not constitute incompetence; however, numerous minor errors may be looked

upon, as a whole, as incompetence. His actions, or lack of action, concerning the reverse waiver motion constituted incompetence and violated MRPC 1.1. Accordingly we overrule respondent's exception to that finding.

Respondent does not except to the finding that he violated MRPC 1.3 in failing to act with either diligence or promptness in representing his client. We still feel the need to briefly address that his actions were indeed in violation of MRPC 1.3. In *Attorney Grievance Commission v. Pinkney*, 311 Md. 137, 141, 532 A.2d 1367, 1369 (1987), we disciplined an attorney who led her client to believe that she had filed a lawsuit on the client's behalf when in fact she had not. We held:

"Respondent violated DR 6–101(A)(3) [24] by neglecting a legal matter entrusted to her. Respondent admitted that she set Ms. Manners' file aside from all of the others in her office and ignored it unless she heard from Ms. Manners. She also failed to adequately investigate and sufficiently research the matter to either establish that there was a cause of action or dissuade Ms. Manners from pursuing the claim if there was insufficient basis to file suit."

Clearly, respondent was in violation of MRPC 1.3.

### b. MRPC 1.4

 Respondent excepts to the finding that he violated MRPC 1.4 in failing to meet with his client, or otherwise discuss the case with Mr. Haggins or Ms. Johnson for a period of over four months. We shall overrule this exception. The testimony presented by Ms. Johnson is compelling. Between September 1997, when she retained respondent to represent her son, and January 1998, respondent had essentially no contact with his client or his client's mother. As Ms. Johnson testified:

I called [respondent's] office, his secretary would answer and say that he wasn't there. If I got [respondent], he would say he was busy, and that he was going to go and see

---

**24.** *See supra* note 22. The comment to MRPC 1.3 cites DR 6–101 as its earlier Code counterpart.

my son, or either he would be in Upper Marlboro, and it never happened.

Ms. Johnson continued to have problems tracking down respondent until March of 1998 when he told her that Ms. Djurickovic was handling the case.

Considering the evidence presented concerning the lack of work actually performed on Mr. Haggins case, the repeated pattern of respondent avoiding his clients, and the testimony of Ms. Johnson, we concur with the finding of the trial court. Accordingly, we hold that respondent was in violation of MRPC 1.4 for failing to communicate with his client for a period of at least four months.

### c. MRPC 8.4

Respondent also excepts to Judge Mason's finding that he violated MRPC 8.4 in accepting Mr. Haggins' case for representation and thereafter taking no action to provide representation and further misrepresenting to his client's mother that he was taking such efforts. We overrule this exception. He also excepts to the trial court's finding that he violated MRPC 8.4 by attempting to mislead the court by testifying that he had believed that he had given the case to Ms. Djurickovic in a timely fashion and reasonably believed that she was doing that which was necessary. We grant this exception.

The relevant provisions of MRPC 8.4 have already been stated, *supra*. We agree that insufficient action was taken by respondent and that he misrepresented to the client's mother that he was "taking such efforts." The record reflects that on numerous occasions respondent told Ms. Johnson things that were not true: (1) he told her that he was going to file a petition for reverse waiver; and (2) that he was going to visit her son in jail. He performed neither of these activities.[25] His comments were made with the intent to mislead his client and his client's mother. The evidence presented justifies a

---

**25.** Respondent did visit his client in jail during his initial interview. There is no evidence that he visited client after he informed his client's mother that he intended to do so.

finding of misconduct under MRPC 8.4. Accordingly, we overrule respondent's exception with regard to his misrepresentations to Ms. Johnson and Mr. Haggins.

We do, as we have indicated, grant respondent's exception to Judge Mason's finding that he falsely testified to the hearing court that he believed he had given the case to Ms. Djurickovic in a timely fashion and reasonably believed that she was taking necessary action. As we stated, *supra*, conduct before the circuit court at an attorney disciplinary hearing cannot be the basis for a separate finding of a violation of MRPC 8.4 in the same proceeding. Judge Mason erred in making such a finding. Therefore, we overrule the trial court's finding that respondent violated MRPC 8.4 with respect to his hearing testimony.

### Complaint of Melvin Postell

The trial court found that respondent was in violation of MRPC 1.1, 1.3, 1.4, 5.3, 8.1, and 8.4 for his actions conducted in the representation of Melvin Postell. Respondent excepts to all of the court's findings in regard to the Postell matters.

### a. MRPC 1.1, 1.3, & 1.4

On the day of Mr. Postell's trial, an unknown member of respondent's staff told Mr. Postell over the telephone that he did not need to appear at the trial. In reliance on this information, Mr. Postell did not appear for trial on March 30, 1998. No representative from respondent's office appeared for the trial. As we discussed, *supra*, an attorney's failure to appear in court for his client's trial, without sufficient explanation, is a violation of MRPC 1.1. The same logic applies here, except in this case, respondent not only failed to appear for the scheduled trial, his office also incorrectly told his client that he need not appear as well. Based on respondent's failure to appear at trial and his office's providing incorrect legal advice, we hold that he violated MRPC 1.1. Accordingly, we sustain that finding of the trial court and overrule respondent's exception. As we discussed, *supra*, respondent's failure to appear for his client's trial, also constitutes a violation of

MRPC 1.3. The additional consideration that respondent's office incorrectly told Mr. Postell that he did not need to appear for his trial simply adds to the incompetency of this particular representation. Accordingly, we sustain the trial court's finding and overrule the respondent's exception.

 Respondent excepts to the trial court's finding that he violated MRPC 1.4 by failing to keep Mr. Postell informed about the status of his case. Keeping the client informed is a basic responsibility of an attorney. Through MRPC 5.3, which we discuss, *infra*, this responsibility to communicate may include communications between a client and an attorney's staff. MRPC 1.4(a) states in relevant part that "[a] lawyer shall keep a client *reasonably informed about the status of a matter. . . .*" (emphasis added). Additionally, the comment to MRPC 1.4 states that the "[a]dequacy of communication depends in part on the kind of advice or assistance involved." When Mr. Postell called respondent's office, he was incorrectly told that he did not need to appear for his scheduled trial. That is not the furnishing of reasonable information to a client. Mr. Postell relied on that incorrect information to his detriment. Respondent did not keep Mr. Postell reasonably informed. In fact, Mr. Postell would have been better off had respondent's office given him no advice, rather than incorrect advice. We therefore overrule respondent's exception.

### b. MRPC 5.3 (Responsibilities regarding nonlawyer assistants)

 Respondent excepts to the trial court's finding that he violated MRPC 5.3. The trial court found that respondent failed to make any reasonable efforts to ensure that his administrative staff would accurately inform the clients of the status of their case. Obviously, reasonable efforts were not taken in the Postell case to ensure that respondent's nonlawyer assistants conducted themselves in a manner compatible with the professional obligations of the lawyer. There is no other explanation for a member of his office staff to incorrect-

ly tell a client that he did not need to attend his own trial. MRPC 5.3 provides in pertinent part:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> . . . .
>
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer. . . .

Respondent is responsible for the errors of his staff. As we have said:

> "An attorney may not escape responsibility to his clients by blithely saying that any shortcomings are solely the fault of his employee." [*Attorney Griev. Comm'n v. Goldberg*, 292 Md. 650, 655, 441 A.2d 338, 341 (1982).] An attorney must ascertain that his or her employees perform their responsibilities in a competent manner.
>
> Maryland Rules 5.3(b) and (c) concern a lawyer's duty to supervise employees; Rule 5.3(a) concerns operating procedures and measures. Rule 5.3(b) requires an attorney to make reasonable efforts to ensure that employees' conduct is compatible with the lawyer's professional obligations. Rule 5.3(c) holds a lawyer responsible for conduct of an employee that would be a violation of the rules of professional conduct if the lawyer orders, or with knowledge of the specific conduct, ratifies the conduct involved, or if the lawyer is a partner or direct supervisor over the employee and, knowing of the conduct, fails to take reasonable remedial action to avoid the consequences of the conduct at a time when its consequences can be avoided.

*Glenn*, 341 Md. at 479–80, 671 A.2d at 478. To have a situation where a member of an attorney's staff, on behalf of that attorney, gives a client incorrect advice, which results in the client being incarcerated for two days, leads to no other conclusion but that respondent violated MRPC 5.3.

### c. MRPC 8.1

Respondent excepts to the trial court's finding that he violated MRPC 8.1. The court found that respondent falsely informed the bar investigator that he had assigned the case to his associate. Concerning his failure to appear, respondent indicated to Mr. Biennas that he had assigned the case to Ms. Djurickovic. Ms. Djurickovic testified that she had never been assigned Mr. Postell's case and only became aware of it after the failure to appear, when Mr. Postell's call was forwarded to her. Because of her testimony and because (1) the trial was set for March 30, 1998 and, according to the exhibits, respondent did not enter his appearance in this case until March 26, 1998; and (2) respondent, not Ms. Djurickovic, drafted the motion to rescind the bench warrant, the court found that he gave the bar investigator false information. We disagree.

As discussed in the Greenhill case, *supra,* the evidence in the Postell case does not support a finding, by clear and convincing evidence, that respondent violated MRPC 8.1 by telling the bar investigator that "he believed the case had been assigned to the associate." [26] It is respondent's contention that he told the bar investigator that he believed that the Postell case had been assigned to Ms. Djurickovic based on his knowledge that ninety to ninety-five percent of the cases in his office, which were pending in Prince George's County were handled by Ms. Djurickovic, that Mr. Postell's case was in Prince George's County, and he could not find Mr. Postell's file. In other words, according to him, he assumed that he had assigned the case to her and gave an answer that reflected that assumption. Just as we held that the evidence does not support a finding that respondent violated MRPC 8.1 in the Greenhill case, we hold the same in the Postell case.

---

**26.** We do not mean to indicate that an attorney can avoid being truthful and candid with Bar Counsel by qualifying answers with "I assume" or "I believe." In the present case, however, there was some evidence that supports that respondent may have truly believed or assumed what he claimed he believed or assumed.

Accordingly, we grant respondent's exception as to the MRPC 8.1.

#### d. MRPC 8.4

Respondent excepts to the trial court's finding that he violated MRPC 8.4. The trial court found that because respondent violated MRPC 1.1, 1.3, 1.4, 5.3, and 8.1, he also violated MRPC 8.4(a), which states, "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Profession Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Because we have held, *supra,* that respondent violated MRPC 1.1, 1.3, 1.4, and 5.3, we hold that he also violated MRPC 8.4(a).

Judge Mason's finding that respondent violated 8.4(c) was based on his belief that respondent attempted to deceive the bar investigator regarding his handling of the case and on respondent's lack of candor concerning the motion to rescind the bench warrant. We do not agree. Judge Mason's finding as to this issue is not supported by clear and convincing evidence. As discussed, *supra,* there is insufficient evidence presented in the record that respondent attempted to mislead the bar investigator. Bar Counsel's assertion that respondent lacked candor in his motion to rescind the bench warrant also falls short of a MRPC 8.4 violation. Bar Counsel never charged respondent with a violation of MRPC 3.3 (Candor toward the tribunal).[27] Additionally, the trial court's finding that respondent violated MRPC 8.4 when he testified that he could not recall what his investigation revealed in this case,

---

27. MRPC 3.3 states:

 (a) A lawyer shall not knowingly:

 (1) make a false statement of material fact or law to a tribunal;

 (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

 (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

 (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

also fails based on our discussion, *supra,* that conduct before the circuit court at an attorney disciplinary hearing cannot be the basis for a separate finding of a violation of MRPC 8.4 in the same proceeding. As such, trial court's finding was in error.

### Complaint of Dee Dee Cunningham

Respondent was retained by Ms. Cunningham to represent her in connection with an assault trial scheduled for May 28, 1998. In his representation of Ms. Cunningham, the trial court found that respondent violated MRPC 1.1, 1.3, 1.4, 5.1, and 8.4. We agree with all the findings of the trial court except the finding that respondent violated MRPC 8.4 based on possible false testimony before the hearing court in this disciplinary matter.

### a. MRPC 1.1, 1.3, & 1.4

Respondent excepts to the trial court's finding that he violated MRPC 1.1. We disagree with respondent, over-rule his objection, and sustain the finding of the court. Respondent's failure, without sufficient explanation, to subpoena witnesses and to obtain medical records, which may have exculpated his client, and which were specifically brought to respondent's attention by his client, is a violation of MRPC 1.1. Additionally, he assigned the case to Ms. Djurickovic without telling her about the existence of the witnesses or medical file. Looking at the facts and circumstances of this case, respondent was incompetent. He was neither thorough nor adequately prepared in his representation of Ms. Cunningham. As we noted in *Attorney Grievance Commission v. Sinclair,* 302 Md. 581, 589, 490 A.2d 236, 240 (1985), failure to contact witnesses except one hostile to his client's claim, and adequately to investigate the facts giving rise to his client's injuries, constituted a violation of MRPC 1.1. *See Attorney Grievance Comm'n v. Sheehy,* 298 Md. 371, 378, 470 A.2d 341, 344 (1984) (inadequate preparation of client's case—naming an obviously improper party when the names of the proper defendants were readily discoverable—filing the complaint on

the day before the statute of limitations was to run). Additionally, as we noted in *Brown,* 308 Md. at 231–32, 517 A.2d at 1117, the individual errors may not constitute incompetence; however, numerous minor errors may, as a whole, constitute incompetence. Respondent's failure to subpoena witnesses, collect the medical file, and failure to tell the associate handling the case of their existence constitutes incompetence and a violation of MRPC 1.1. Accordingly we overrule respondent's exception to that finding. Under this same rationale, we hold that respondent violated MRPC 1.3 and overrule respondent's exception to that finding as well.

Respondent excepts to the finding that he violated MRPC 1.4 in failing to respond to any of Ms. Cunningham's phone calls or correspondence prior to the trial and in failing to respond to her letter of June 12, 1998. We also overrule this exception. After the initial consultation, respondent never answered or returned any of Ms. Cunningham's telephone calls. Respondent, at the last minute, sent his associate, Ms. Djurickovic, to handle the trial. Because of respondent's failures, she was grossly unprepared and Ms. Cunningham was convicted. After Ms. Cunningham's conviction, respondent continued to avoid her telephone calls and virtually ignored her letter of June 12, 1998. Considering the evidence presented concerning the lack of work actually performed on Ms. Cunningham's case, the repeated pattern of respondent avoiding his clients, and the testimony of Ms. Cunningham, we concur with the finding of the trial court. Accordingly, we hold that respondent violated MRPC 1.4 for failing to communicate with his client.

### b. MRPC 5.1 (Responsibilities of a partner or supervisory lawyer)

Respondent excepts to the court's finding that he violated MRPC 5.1. We disagree with respondent's argument and sustain the finding. MRPC 5.1 provides in relevant part:

(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving

reasonable assurance that all lawyers in the firm conform to the rules of professional conduct.

We conclude that the system set up by respondent to provide files to Ms. Djurickovic for Prince George's County cases was woefully inadequate. It was not reasonably designed to make sure that Ms. Djurickovic received the files in a timely fashion and to ensure that she received notice that she had been assigned to a given case. As a result, she was unable to provide Ms. Cunningham with adequate representation in her trial. As a partner, it was respondent's responsibility to make reasonable efforts to ensure measures were in effect in his office to assure compliance with the MRPC. Clearly, no such measures were in place; thus, respondent violated MRPC 5.1.

### c. MRPC 8.4

Respondent excepts to the trial courts finding that he violated MRPC 8.4 by virtue of the violations of the rules of professional conduct as set out, *supra,* by failing to respond to Bar Counsel's request for information regarding Ms. Cunningham's complaint and by attempting to mislead the court by testifying that he could not recall what had occurred in this case. We agree that respondent violated MRPC 8.4 with regard to his violations of MRPC 1.1, 1.3, 1.4 and 5.1. However, we disagree that respondent violated MRPC 8.4 with regard to responding to Bar Counsel's request for information and by attempting to mislead the court by testifying that he could not recall what had occurred in this case. A violation of MRPC 8.1(b) was not alleged in this proceeding.[28] Regarding respondent's supposed false testimony, as we discussed, *supra,* conduct before the circuit court at an attorney disciplinary hearing cannot be the basis for a separate finding of a violation of MRPC 8.4.

---

**28.** As we stated, *supra,* MRPC 8.1(b) states that a lawyer shall not:

fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

### III. Sanction

■■■ Regarding the proper sanction to apply in an attorney grievance case, we noted recently that

"[t]he purpose of disciplinary proceedings against an attorney is to protect the public rather than to punish the erring attorney." *Attorney Griev. Com'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991). "The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm. v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). The severity of the sanction depends upon the facts and circumstances of the case before this Court. *Hamby,* 322 Md. at 611, 589 A.2d at 56. Imposing a sanction protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." *Id.*

*Attorney Grievance Comm'n v. Ober,* 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998) (alteration in original).

Bar Counsel recommends that respondent be indefinitely suspended from the practice of law without prejudice to his right to apply for reinstatement after three years. Bar Counsel also recommends that respondent pay for, attend, and complete a legal ethics course, and that he be supervised by a monitor for a period of two years should he be reinstated. Respondent submits that a public reprimand is the appropriate sanction.

In *Attorney Grievance Comm'n v. David,* 331 Md. 317, 323, 628 A.2d 178, 181 (1993), we suspended an attorney indefinitely from the practice of law because the attorney's representation of four clients was marked by serious neglect and inattention; he "failed to return a fee, which was unearned for a period of nine months; he failed to timely remit funds he received on behalf of a client; he failed to communicate with his clients; and in connection with the investigation of three of the complaints, [he] failed to answer Bar Counsel's requests for information." *Id.* We granted him the right to apply for

reinstatement after the suspension had been in effect for six months. In *Attorney Grievance Commission v. Alison,* 349 Md. 623, 644, 709 A.2d 1212, 1222 (1998), we also imposed an indefinite suspension upon an attorney who committed misconduct under MRPC 8.4. In *Attorney Grievance Commission v. Brown,* 353 Md. 271, 296, 725 A.2d 1069, 1081 (1999), we suspended an attorney indefinitely with the right to apply for reinstatement after one year for violations of MRPC 1.4, 3.1, 3.3, 5.5, 7.1, 7.5, and 8.4.

We have also ordered that suspended attorneys who are reinstated to the Bar of Maryland may be subject to the supervision of a monitor. As we have said:

> Since the *Bailey* [29] and *Finlayson* [30] cases, it has become relatively common to require monitoring appropriate to the circumstances as a condition of reinstatement after a suspension for disciplinary violations that concern competency. Typically the requirement has stated generally that the monitor "oversee" the practice of the sanctioned lawyer. *See, e.g., Attorney Grievance Comm'n v. Brugh,* 353 Md. 475, 727 A.2d 913 (1999); *Attorney Grievance Comm'n v. Kuhn,* 353 Md. 423, 726 A.2d 1269 (1999); *Attorney Grievance Comm'n v. Perweiler,* 353 Md. 312, 726 A.2d 238 (1999); *Attorney Grievance Comm'n v. Kreamer,* 353 Md. 85, 724 A.2d 666 (1999); *Attorney Grievance Comm'n v. Domingues,* 352 Md. 395, 722 A.2d 883 (1999); *Attorney Grievance Comm'n v. Massagli,* 352 Md. 277, 721 A.2d 698 (1998).

*In re Reinstatement of Grier,* 356 Md. 142, 148–49, 737 A.2d 1076, 1079 (1999).

Respondent violated MRPC 1.1, 1.3, 1.4, 5.1, 5.3, and 8.4. Consistent with *Alison, David,* and *Brown,* we find an indefinite suspension to be the appropriate sanction for respondent's

---

**29.** *Attorney Grievance Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979).

**30.** *Attorney Grievance Comm'n v. Finlayson,* 293 Md. 156, 442 A.2d 565 (1982).

conduct. The number and similarities of the complaints before this Court are of great concern. We note that while we have generally suspended lawyers who for the first time have been found to have violated rules relating to competency; we have disbarred subsequent offenders. *See Attorney Grievance Comm'n v. Montgomery*, 318 Md. 154, 567 A.2d 112 (1989) (*Montgomery II* ). Respondent appears before us for the first time.

We order that respondent be indefinitely suspended and that he may apply for readmission to the practice of law ninety days from the effective date of his suspension, which shall commence thirty days after this opinion is filed. We also order that respondent, upon reinstatement, shall engage, at his expense, a monitor, acceptable to Bar Counsel, who will oversee both respondent's practice of law and respondent's accounting for funds entrusted to him, for a period of two (2) years and who will provide to Bar Counsel monthly reports for one (1) year and quarterly reports thereafter.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST THOMAS J. MOONEY; RESPONDENT'S SUSPENSION SHALL COMMENCE THIRTY DAYS FROM THE FILING OF THIS OPINION.**

Dissenting opinion by RAKER, J., joined by WILNER and HARRELL, JJ.

RAKER, Judge, dissenting:

I disagree with the majority's treatment of Respondent's exceptions as to Rules 8.1 and 8.4, as well as with the sanction imposed by the Court. As to the sanction, I would impose an indefinite suspension with the right to apply for reinstatement in one year.

With respect to Rule 8.1, I would overrule Respondent's exception to the hearing court's findings that he lied to or deceived the bar investigator, Mr. Biennas, when Respondent indicated that the Greenhill, Postell and Cunningham cases had been assigned to Ms. Djurickovic. The hearing judge is in the best position to assess credibility of witnesses. *Attorney Griev. Comm'n v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999) (noting that trial judge "is in the best position to assess first hand a witness's credibility").

Judge Mason considered all the testimony before him, including Respondent's denial of a critical statement to the investigator, and concluded that Respondent "made a false representation to the investigator for bar counsel when he told him that he believed the case had been assigned to the associate, which he does not want to admit." Judge Mason did exactly what this Court has suggested he should have done, i.e., provided this Court with a credibility finding, and the basis therefor. The judge wrote, in his findings of fact:

> Mr. Mooney's testimony that he can't say what happened here because he can't find Ms. Greenhill's file is very troubling. The Court does not believe Mr. Mooney would need the file to be able to recall what had occurred. Mr. Mooney, or at the least his office, was immediately notified by Ms. Greenhill of the failure to appear at trial. It is inconceivable to the Court that Mr. Mooney, once aware of the failure to appear, would not investigate what had happened. Even if the secretary who spoke to Ms. Greenhill about the failure to appear failed to give the message to Mr. Mooney, Ms. Greenhill spoke to him in person within a few weeks of that date. Therefore, at the very least, Mr. Mooney would have investigated what had occurred within a few weeks of the failure to appear.

> If Mr. Mooney hadn't investigated the matter prior to February 20, 1998, then certainly he would have investigated it when he got the letter from bar counsel of that date. Ultimately, when he responds to bar counsel after a second letter, he says he delayed responding because he "wanted to investigate the allegations." In his letter to Ms. Greenhill,

he states "when I became aware of your allegations, I immediately investigated the situation." He also tells her that as a result of his investigation he has hired an office manager to oversee staff and instruct his staff on how to answer the phone.

The Court simply finds it inconceivable that Mr. Mooney could have investigated this failure to appear, as a result of the investigation hired an office manager (and fired his secretary according to his letter to bar counsel), and now can't remember what his investigation revealed! Instead, the Court concludes that Mr. Mooney has taken this position because his investigation revealed that Ms. Djurickovic had never received this file as she testified. This means he made a false representation to the investigator ·for bar counsel when he told him that he believed the case had been assigned to the associate, which he does not want to admit. Although Mr. Mooney denies making such a statement to bar counsel, the Court finds that he did.

This finding is supported by clear and convincing evidence. We tell juries that they are not required to accept every far-fetched fairy tale; neither are trial judges. Because I find sufficient evidence to support Judge Mason's finding that Respondent attempted to mislead the bar investigator, I would also overrule the exception regarding Rule 8.4(c).

As to the sanction, I would impose an indefinite suspension with the right to apply for reinstatement after one year. Repeated neglect of client matters and incompetency are no small matters. Neither is intentionally misleading or misrepresenting to bar counsel. Indeed, both are serious rule violations. *See Chang v. State Bar*, 49 Cal.3d 114, 260 Cal.Rptr. 280, 775 P.2d 1049, 1056 (1989) (stating that "[w]e have held that fraudulent and contrived misrepresentations to the State Bar may perhaps constitute a greater offense than misappropriation") (citing *Cain v. State Bar*, 25 Cal.3d 956, 160 Cal. Rptr. 362, 603 P.2d 464, 467 (1979))).

Judges WILNER and HARRELL have authorized me to state that they join in the views expressed in this dissenting opinion.