Attorney Grievance Comm'n v. Alexander Manjanja Chanthunya, Misc. Docket AG No. 58, September Term, 2014

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION FROM PRACTICE OF LAW IN MARYLAND WITH RIGHT TO APPLY FOR REINSTATEMENT AFTER SIXTY DAYS –** Court of Appeals indefinitely suspended from practice of law in Maryland with right to apply for reinstatement after sixty days lawyer who failed to engage in sufficient preparation, and failed to adequately communicate, with two clients in immigration cases. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 8.4(d) (Conduct That Is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Montgomery County
Case No. 30451-M

Argued: September 28, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 58

September Term, 2014

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ALEXANDER MANJANJA CHANTHUNYA

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned)

JJ.

_____

Opinion by Watts, J.
Harrell, J., joins in judgment only.

_____

Filed: March 25, 2016

This attorney discipline proceeding involves an immigration lawyer who failed to represent two clients competently, diligently, and with adequate communication, and who was alleged to have committed a crime by touching a female client's breast without her consent.

Alexander Manjanja Chanthunya ("Chanthunya"), Respondent, a member of the Bar of Maryland, represented Souadou Traore ("Traore") in her applications for a green card[1] and a waiver of grounds of inadmissibility,[2] and represented Therese Vanguere ("Vanguere") in an application for asylum.[3] Chanthunya failed to engage in sufficient preparation, and failed to adequately communicate, with both clients, who filed complaints against Chanthunya with the Attorney Grievance Commission ("the Commission"), Petitioner.

On October 24, 2014, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Chanthunya, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 3.3(a)(1) (Candor Toward the Tribunal), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation),

---

[1]A green card is "[a] registration card evidencing a resident alien's status as a permanent U.S. resident." Green Card, Black's Law Dictionary (10th ed. 2014).

[2]"If [a person who immigrates is] inadmissible to the United States and [is] seeking an immigrant visa, adjustment of status, certain nonimmigrant statuses[,] or certain other immigration benefits, [the person who immigrates] must file [a] form to seek a waiver of certain grounds of inadmissibility." I-601, Application for Waiver of Grounds of Inadmissibility, U.S. Citizenship and Immigration Services, https://www.uscis.gov/i-601 [https://perma.cc/B3T7-L57Y].

[3]Asylum is "[p]rotection of usu[ally] political refugees from arrest by a foreign jurisdiction[.]" Asylum, Black's Law Dictionary (10th ed. 2014).

8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).

On October 30, 2014, this Court designated the Honorable Terrence J. McGann ("the hearing judge") of the Circuit Court for Montgomery County to hear this attorney discipline proceeding. On March 25 and 26, 2015 and April 29, 2015, the hearing judge conducted a hearing, at which Chanthunya was present and self-represented. On June 18, 2015, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Chanthunya had violated MLRPC 1.1, 1.3, 1.4, 8.4(b), and 8.4(d), but had not violated MLRPC 8.4(a).[4] The hearing judge found that testimony by Traore that Chanthunya touched her breast was not credible.[5] In our view, the hearing judge's explanation of his finding reveals that the hearing judge based his findings on what he believed a victim of sexual assault would or should do—namely, report the incident to law enforcement and/or the victim's spouse, and cease contact with the perpetrator.

On September 28, 2015, we heard oral argument. On October 1, 2015, we remanded this attorney discipline proceeding to the hearing judge to address important issues that arose out of the hearing judge's findings of fact and conclusions of law. Chief among other

---

[4]The Commission withdrew the charges that Chanthunya had violated MLRPC 3.3(a)(1) and 8.4(c).

[5]Specifically, Traore testified as follows. In Summer 2009 or 2010, Traore visited Chanthunya's office to give him some papers that were related to her legal matters. Traore said that she needed to use the restroom. Chanthunya gave her the key to the restroom. Traore used the restroom and returned the key to Chanthunya, who then touched Traore's breast. Traore asked: "What [was] that for?" Chanthunya's only response was: "Well." Chanthunya did not ask for permission to touch Traore's breast. Traore did not in any way give Chanthunya permission to touch her breast.

issues, we ordered the hearing judge to "[p]rovide a better explanation for why he found that [] Traore's testimony [that Chanthunya touched her breast] was not credible . . . , if indeed [the hearing judge] continue[d] to maintain that[.]" On January 22, 2016, the hearing judge filed in this Court a supplemental opinion in which the hearing judge maintained that Traore's testimony that Chanthunya touched her breast was not credible, and concluded that Chanthunya had violated MLRPC 8.4(a), but had not violated MLRPC 8.4(b).

In his supplemental opinion, the hearing judge provided essentially the same basis for finding not credible Traore's testimony that Chanthunya touched her breast without her consent. Given that we have already remanded this attorney discipline proceeding to the hearing judge to address this matter, and that the hearing judge provided the same inappropriate basis for finding that Traore's testimony was not credible in his supplemental opinion, we conclude that it would be futile to remand yet again to the hearing judge to properly address the matter of Traore's credibility.

Nonetheless, for the below reasons, we indefinitely suspend Chanthunya from the practice of law in Maryland with the right to apply for reinstatement after sixty days.

**BACKGROUND**

In his original opinion, the hearing judge found the following facts, which we summarize.

In 1978, Chanthunya first became a lawyer. Over twenty years later, on June 24, 1999, this Court admitted Chanthunya to the Bar of Maryland.

**Chanthunya's Representation of Traore**

In 1998, Traore, a citizen of Guinea, entered the United States. In 2009, Traore retained Chanthunya to represent her in her application for a green card and her application for a waiver of grounds of inadmissibility. On November 23, 2009, on Traore's behalf, Chanthunya filed an application for a green card with the United States Citizenship and Immigration Service ("USCIS"). The application for a green card contained inaccurate statements and spaces that were not filled in that should have been, and Chanthunya failed to attach required or necessary documents, such as the identification page of Traore's passport. In December 2009, April 2010, and September 2010, USCIS requested additional documents from Chanthunya, who failed to inform Traore of USCIS's three requests.

USCIS scheduled an interview regarding Traore's application for a green card. Chanthunya failed to: prepare Traore for the interview; advise her of what to expect at the interview; appear at the interview himself; and ask USCIS to reschedule the interview.

USCIS denied Traore's application for a green card and a waiver of grounds of inadmissibility, and Chanthunya failed to inform Traore as much. After USCIS informed Traore about the applications' denial, Traore contacted Chanthunya, who promised to file an appeal. Traore, however, did not receive notice from USCIS that the appeal had been filed. Traore telephoned Chanthunya to ask about the status of the appeal, and Chanthunya promised to call her back. Chanthunya, however, failed to contact Traore, prompting her to visit USCIS herself. Upon visiting USCIS, Traore was unable to confirm that the appeal had been filed. Chanthunya's omissions cost Traore the opportunity to have USCIS

consider the appeal.

Finally, on at least ten occasions during Chanthunya's representation of her, Traore visited Chanthunya's office because he was not answering her telephone calls.

**Chanthunya's Representation of Vanguere**

In 2007, Vanguere, a citizen of the Central African Republic, entered the United States. Vanguere applied for asylum and retained Chanthunya to represent her in her application for asylum. Chanthunya failed to: prepare Vanguere for the asylum hearing; advise her of the benefits and risks of postponing her case; advise her of the type of evidence that she needed; and submit on Vanguere's behalf corroborating evidence, such as evidence that Vanguere's family members had been persecuted in the Central African Republic.[6] Chanthunya also failed to review the Baltimore Immigration Court's file to ensure its completeness. Although the Baltimore Immigration Court denied Vanguere's application for asylum, the hearing judge found that the denial was due to Vanguere's lack of credibility, not Chanthunya's lack of preparation.

Vanguere subsequently filed a motion to reopen her asylum application based on ineffective assistance of counsel by Chanthunya as well as changed country conditions in the Central African Republic. The Board of Immigration Appeals granted the motion, and remanded the case to the Baltimore Immigration Court for a *de novo* asylum hearing.

---

[6]The record includes a transcript of the asylum hearing, which occurred in the Baltimore Immigration Court on May 4, 2009. At the asylum hearing, Vanguere testified as follows. All of Vanguere's family members belonged to a political party called the Movement of the Liberation of the People of Central Africa. On January 1, 1991, members of an opposing political party killed Vanguere's father. On May 28, 2001, a group of soldiers shot Vanguere's uncle.

**Aggravating Factors and Mitigating Factors**

The hearing judge found that Chanthunya's misconduct is aggravated by a pattern of misconduct, multiple violations of the MLRPC, refusal to acknowledge the misconduct's wrongful nature, and substantial experience in the practice of law. The hearing judge found that Chanthunya's misconduct is mitigated by the absence of prior attorney discipline and the absence of a dishonest or selfish motive.

**Remand and Supplemental Opinion**

In his original opinion, the hearing judge found that Traore's testimony that Chanthunya touched her breast during a meeting in Chanthunya's office was not credible. The hearing judge explained the basis for his finding as follows:

> [Traore] never called [law enforcement], never reported [the alleged assault] to any authorities[,] and continued to be represented by [Chanthunya]. If [Traore] told her husband[,] it would be odd that he never confronted [Chanthunya;] and[,] if [Traore] didn't tell her husband[,] that would be an abnormal reaction. I wasn't convinced by clear and convincing evidence that [Chanthunya] assaulted [] Traore[.]

In his original opinion, the hearing judge concluded that Chanthunya had violated MLRPC 8.4(b) (Criminal Act) and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), but the hearing judge did not explain the bases for those conclusions. The hearing judge also concluded that Chanthunya had not violated MLRPC 8.4(a) (Violating the MLRPC).

The Commission excepted to the hearing judge's finding that Traore's testimony concerning Chanthunya's touching of her breast was not credible. The Commission pointed out that Traore's testimony on this point was uncontested, that the hearing judge

concluded that Chanthunya violated MLRPC 8.4(b) (Criminal Act), and that the only basis for such a conclusion was the Commission's allegation that Chanthunya sexually assaulted Traore. The Commission asserted that the hearing judge's finding was influenced by the hearing judge's "assumptions or beliefs about what the victim of a sexual assault would or should do[.]" (Emphasis omitted). The Commission also excepted to the hearing judge's conclusion that Chanthunya had not violated MLRPC 8.4(a).

We remanded to the hearing judge with instructions to address the following four issues:

> 1. Reconciliation of what appears to be a discrepancy between his determination that [Chanthunya] violated [MLRPC] 8.4(b) in [] Traore's case and his finding that [] Traore's testimony was not credible as to the facts underlying the alleged [MLRPC] 8.4(b) violation; 2. Provide a better explanation for why he found that [] Traore's testimony was not credible on the issue of the unconsented sexual touching, if indeed he continues to maintain that; 3. Clarify the bases for the conclusion that "There is not clear and convincing evidence that [Chanthunya] violated [MLRPC] 8.4(a)", while also concluding elsewhere that [MLRPC] 1.1, 1.3, 1.4, 8.4(b), and 8.4(d) were violated; and 4. Explain the basis for the conclusion that [Chanthunya] violated [MLRPC] 8.4(d).

(Citations and paragraph breaks omitted).

In his supplemental opinion, the hearing judge determined that Chanthunya did not violate MLRPC 8.4(b) because the Commission failed to prove by clear and convincing evidence that Chanthunya sexually assaulted Traore. The hearing judge again found that Traore's testimony that Chanthunya touched her breast was not credible because:

> Traore was vague regarding the date on which the alleged incident occurred, she failed to report the incident to the authorities, her husband failed to take any action[,] and she continued to allow [Chanthunya] to represent her. [] Traore's previous deceptions with respect to her immigration application cast additional doubt about her credibility. . . . Traore conceded that she: lied to

US Government officials to gain entry into the United States; prepared a false document that she wanted to use for her asylum application; and lied on her Facebook page when she said [that] she worked for the French Government.

In his supplemental opinion, the hearing judge concluded that Chanthunya had violated MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice) by violating MLRPC 1.1 (Competence), 1.3 (Diligence), and 1.4 (Communication) in representing Traore and Vanguere, and that Chanthunya had violated MLRPC 8.4(a) (Violating the MLRPC) by violating other MLRPC.

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 16-759(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Shuler, 443 Md. 494, 501, 117 A.3d 38, 43 (2015) ("[T]his Court reviews for clear error a hearing judge's findings of fact[.]" (Citations omitted)); Md. R. 16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 16-757(b) ("The [Commission] has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

## DISCUSSION

### (A) Contentions Other Than Exceptions

Chanthunya contends that the hearing judge erred in admitting records from USCIS

into evidence because the records were inadmissible hearsay. In making this allegation, Chanthunya specifies only one exhibit: the Commission's Exhibit 4, which is USCIS's response to a request under the Freedom of Information Act by Michael Schwartz ("Schwartz"), Traore's new lawyer. When the Commission offered its Exhibit 4 into evidence at the hearing, Chanthunya objected solely on a ground other than hearsay.[7] Thus, Chanthunya failed to preserve for review the issue of whether the Commission's Exhibit 4 was inadmissible hearsay. See Peterson v. State, 444 Md. 105, 148, 118 A.3d 925, 949 (2015) ("When an objector sets forth the specific grounds for his [or her] objection, the objector will be bound by those grounds and will ordinarily be deemed to have waived other grounds not specified[.]" (Brackets, citation, ellipsis, and internal quotation marks omitted)).[8]

---

[7]At the hearing, during Schwartz's direct-examination, Assistant Bar Counsel asked Schwartz why he never asked for pages that were redacted from responses to requests under the Freedom of Information Act. Schwartz responded: "Because they aren't germane to the purposes for which I am seeking the record." Immediately afterward, Assistant Bar Counsel offered the Commission's Exhibit 4 into evidence. The hearing judge asked Chanthunya whether he objected, and Chanthunya responded: "Yes." The hearing judge asked for the basis of Chanthunya's objection, and Chanthunya responded: "My objection is, just as [Schwartz] said, the [Freedom of Information Act] request [is] germane to the papers." The hearing judge offered Chanthunya the opportunity to *voir dire* Schwartz about the Commission's Exhibit 4, and Chanthunya did so. After Chanthunya finished the *voir dire*, the hearing judge admitted the Commission's Exhibit 4 into evidence over Chanthunya's objection. At no point did Chanthunya indicate that hearsay was another ground for his objection to the Commission's Exhibit 4.

[8]We note that, prior to the hearing in this attorney discipline proceeding, Chanthunya filed a "Motion to Strike [the Commission]'s Responses to [Chanthunya]'s Request for Admissions," in which Chanthunya argued that the intended introduction into evidence of the Commission's Exhibit 4 was problematic because "[i]t [wa]s not known what [wa]s in the blocked pages[,] but certainly [the blocked pages] must have a bearing on the case for or against" him, and that he had "no effective means of defending himself

- 9 -

Chanthunya also contends that the hearing judge erred in accepting Ana Zigel ("Zigel") as an expert in the field of immigration and nationality law and in allowing Zigel to opine that Chanthunya was neither competent nor diligent in representing Traore and Vanguere. Specifically, Chanthunya argues that: (1) the Commission did not disclose during discovery that it would offer Zigel as an expert witness; (2) Zigel's opinions lacked a sufficient factual basis; (3) Zigel impermissibly speculated; and (4) Zigel's opinions lacked a basis that was generally accepted as reliable. We reject all of Chanthunya's arguments.

Chanthunya fails to state whether he ever required the Commission by interrogatory to identify anyone whom the Commission intended to call as an expert witness at the hearing. See Md. R. 2-402(g)(1)(A) ("A party by interrogatories may require any other party to identify each person, other than a party, whom the other party expects to call as an

---

without knowing the reasoning upon which USCIS twice denied [] Traore's" application for waiver of grounds of admissibility and the "reasoning process upon which USCIS granted [] Traore's" third application. In essence, Chanthunya moved *in limine* to preclude introduction of the Commission's Exhibit 4. The hearing judge denied the motion. Chanthunya filed a motion for reconsideration, again referencing the Commission's Exhibit 4, and arguing that the Commission "did not rebut or offer any explanation why [Chanthunya] would not be prejudiced by missing information from [] Traore's file that [the Commission] intends to submit to the [hearing judge] as part of its evidence[,]" and asserting that it was "incumbent on the [Commission] that its case be based on fact and not speculations[.]" The Commission opposed the motion for reconsideration. In a reply to the opposition, Chanthunya contended that he had "demonstrated that [the Commission]'s failure to obtain full and complete records from USCIS and the [Baltimore] Immigration Court prejudice[d] him in preparation of his defense to [the] charges of misconduct." The hearing judge denied the motion for reconsideration. Chanthunya did not expressly contend in his filings that the Commission's Exhibit 4 was inadmissible hearsay. And, at the hearing in this attorney discipline proceeding, Chanthunya did not reference the arguments made in his filings or otherwise indicate a basis for not admitting the Commission's Exhibit 4 other than the reason that he provided at the hearing.

- 10 -

expert witness at trial[.]"). The record contains a scheduling order by the hearing judge stating that all discovery had to be completed by March 11, 2015. The discovery order did not specify a date for disclosure of expert witnesses, *i.e.*, order the parties to disclose expert witnesses by a certain date. In the absence of a requirement by the hearing judge in the scheduling order that the parties disclose expert witnesses without being asked to do so, Maryland Rule 2-402(g) governs. As such, pursuant to Maryland Rule 2-402(g), it was incumbent upon Chanthunya to request the identification of experts by interrogatory, which he failed to do.

Zigel's opinions had a sufficient factual basis. See Md. R. 5-702(3) ("[A] sufficient factual basis [must] support [] expert testimony."). As the hearing judge detailed in his opinion, Zigel reviewed several documents related to Chanthunya's representation of Traore and Vanguere, and Zigel identified several defects in those documents; for example, Chanthunya failed to attach essential documents, such as the identification page of Traore's passport, to Traore's application for a green card.

As long as an expert is qualified to testify, a sufficient factual basis supports an expert's opinion, and the expert's testimony will be helpful to the trier of fact, the expert may testify. See Md. R. 5-702 ("Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert

testimony."); Md. R. 5-701 (excepting experts from the requirement that opinions be "rationally based on the perception of the witness"); Md. R. 5-703(a) ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."); see also Cerrato-Molina v. State, 223 Md. App. 329, 333 n.1, 115 A.3d 785, 788 n.1, cert. denied, 445 Md. 5, 122 A.3d 975 (2015) ("The appellant makes an automatic villain of the verb 'speculate.' It is a rush to judgment. The word's etymology looks to the Latin root 'spec,' meaning 'to look at.' 'To speculate' is then to think about the implications of what one has looked at and seen. Blind or purely random speculation, to be sure, can be treacherously deceptive. Informed and educated speculation, on the other hand, is a salutary and, indeed, indispensable part of the decision-making process."). In other words, an expert may render an opinion as long as the expert's opinion is based on sufficient facts, as opposed to the expert's mere speculation. See In re 2012 Legislative Districting, 436 Md. 121, 188, 80 A.3d 1073, 1111 (2013) ("An expert's opinion must be grounded in sufficient facts, such that it constitutes more than mere speculation or conjecture." (Brackets, citation, and internal quotation marks omitted)). Here, in his findings of fact, the hearing judge detailed Zigel's qualifications as an expert, and it is obvious from Zigel's testimony that she had reviewed documents pertaining to Chanthunya's representation of Traore and Vanguere. Chanthunya's allegation that Zigel's testimony was speculation is without merit.

An expert's opinion must have a basis that is generally accepted as reliable if and only if the expert's opinion is scientific; in other words, the "Frye-Reed test" applies only "to evidence based on scientific opinion." Montgomery Mut. Ins. Co. v. Chesson, 399 Md.

314, 328, 923 A.2d 939, 947 (2007) (citations omitted). Thus, the "Frye-Reed test" does not apply to a legal expert's opinion that a lawyer violated the MLRPC.

In sum, the hearing judge did not err in admitting Zigel as an expert in the field of immigration and nationality law and in allowing Zigel to opine that Chanthunya was neither competent nor diligent in representing Traore and Vanguere.

Chanthunya also contends that the hearing judge erred by failing to tell him at the hearing that the Commission met the burden of proving by clear and convincing evidence that Chanthunya had violated the MLRPC. Chanthunya alleges that he did not testify at the hearing because he did not think that the Commission had met its burden. Contrary to Chanthunya's assertion, in an attorney discipline proceeding, a hearing judge has no obligation to inform the lawyer at the hearing whether the Commission has met its burden of proof; if the lawyer has any evidence to offer and/or anything about which to testify, the lawyer should do so at the hearing, even if the lawyer does not think that the Commission has met its burden of proof. Here, Chanthunya decided not to testify at the hearing, and his attempt to blame the hearing judge for the consequences of his decision is misplaced.

Finally, Chanthunya contends that the hearing judge erred in not applying the law of ineffective assistance of counsel, as embodied in such cases as Strickland v. Washington, 466 U.S. 668 (1984), in evaluating his representation of Traore and Vanguere. Specifically, Chanthunya argues that the hearing judge should have applied the "performance" prong and the "prejudice" prong under Strickland, 466 U.S. at 690, 696 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . [A] court

making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."). See also Gross v. State, 371 Md. 334, 350, 809 A.2d 627, 636 (2002) (This Court referred to the two-step inquiry under Strickland as "*Strickland's* performance and prejudice prongs[.]").

Chanthunya is mistaken. The law of ineffective assistance of counsel applies to cases in which a person has been criminally charged and convicted—typically, cases that arise out of petitions for postconviction relief. By contrast, in an attorney discipline proceeding, a hearing judge's role is to find facts and conclude whether the lawyer violated the MLRPC, as this Court has interpreted and applied them. For the purpose of determining whether a lawyer has violated the MLRPC, Strickland and its progeny do not apply to the analysis in an attorney discipline proceeding.

### (B) Findings of Fact

### Finding That Traore's Testimony About Sexual Touching Was Not Credible

In response to the hearing judge's supplemental opinion, the Commission excepts to the hearing judge's finding that Traore's testimony regarding Chanthunya's touching of her breast was not credible. With regard to the hearing judge's finding in his supplemental opinion that Traore's "husband failed to take any action[,]" the Commission points out that Traore's husband did not testify, and, thus, there was no evidence that Traore's husband took no action; and, in any event, the Commissions asserts that it is inappropriate to assess a witness's testimony based on someone else's actions or omissions. The Commission contends that it was inappropriate for the hearing judge to consider that Traore did not

- 14 -

contact law enforcement or terminate Chanthunya's representation because Traore testified that she "didn't know what [she] was supposed to do, because" Chanthunya had Traore's immigration files, which included information about "all [of her] problems with the green card."

Reluctantly, we overrule the Commission's exception to the hearing judge's finding that Traore's testimony that Chanthunya touched her breast was not credible. Although the hearing judge again, partially, based his finding on what he believed that a victim of sexual assault would or should do—namely, report the incident to law enforcement and/or the victim's spouse, and cease contact with the perpetrator—the conundrum is that, even if the hearing judge relied on incorrect grounds in finding Traore's testimony that Chanthunya touched her breast not credible, it does not follow that Traore's testimony that Chanthunya touched her breast was, indeed, accurate. It is possible that Traore's testimony was inaccurate—*i.e.*, not credible—and the hearing judge found that Traore's testimony was not credible for the wrong reasons. By way of analogy, suppose that a witness inaccurately testified that "two plus two equals five," and a hearing judge found that the witness's inaccurate testimony was not credible on the ground that "the witness was wearing a red tie, and people who wear red ties always lie." That the hearing judge found that the witness's testimony was not credible for the wrong reason does not mean that the witness's testimony was accurate. In the end, even though no other evidence contradicted Traore's testimony, this Court declines to supersede the hearing judge's determination that Traore's testimony on this matter was not credible. See Md. R. 16-759(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess

- 15 -

the credibility of witnesses."); <u>Attorney Grievance Comm'n v. Mahone</u>, 435 Md. 84, 104, 76 A.3d 1198, 1210 (2013) ("Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks [that are] proper for the" hearing judge. (Citation and internal quotation marks omitted)).

Under the circumstances of this attorney discipline proceeding, we will not supplant the hearing judge's finding that Traore's testimony was not credible. We cannot stress enough, however, that we disapprove of the manner in which the hearing judge addressed Traore's testimony. In his original opinion, the hearing judge found Traore's testimony not credible solely on the following grounds: (1) Traore "never called [law enforcement], never reported [the alleged assault] to any authorities[,] and continued to be represented by" Chanthunya; and (2) "[i]f [Traore] told her husband[,] it would be odd that he never confronted [Chanthunya;] and[,] if [Traore] didn't tell her husband[,] that would be an abnormal reaction." The bases for the hearing judge's findings were so inappropriate that we instructed the hearing judge, on remand, to "[p]rovide a better explanation for why he found that [] Traore's testimony was not credible on the issue of the unconsented sexual touching, if indeed he continues to maintain that[.]" In his supplemental opinion, not adhering to this Court's instruction, the hearing judge essentially gave the same reasons that he had already expressed for finding that Traore's testimony was not credible, and simply added a few inconsequential new reasons.[9] Specifically, the hearing judge once

_____

[9]The new reasons were as follows:

- 16 -

again relied on the circumstances that Traore "failed to report the incident to the authorities[;] her husband failed to take any action[;] and she continued to allow [Chanthunya] to represent her." Our concern is that, in both his original opinion and his supplemental opinion, which was in response to our remand order, the hearing judge based his finding on what he believed a victim of sexual assault and the victim's spouse would or should do—namely, inform law enforcement and cut off contact with the perpetrator, and, in the victim's spouse's case, confront the perpetrator.

These beliefs are unfounded, and indicative of an uninformed view of the manner in which a victim of sexual assault responds to the occurrence. Contrary to the hearing judge's analysis, it is well known that, in many instances, a victim of sexual assault refrains

Traore was vague regarding the date on which the alleged incident occurred[.] . . . Traore conceded that she: lied to US Government officials to gain entry into the United States; prepared a false document that she wanted to use for her asylum application; and lied on her Facebook page when she said [that] she worked for the French Government.

Traore's inability to recall the exact date on which Chanthunya allegedly touched her breast is the only one of these reasons that directly relates to the alleged assault itself and provides little to no support for the hearing judge's finding that Traore's testimony was not credible.

The Commission excepts to the other new reasons for which the hearing judge found that Traore's testimony was not credible. For example, the Commission contends that the hearing judge clearly erred in finding that Traore "prepared a false document that she wanted to use for her asylum application"; the Commission asserts that Traore testified that it was Chanthunya who proposed that she prepare a false document, which he would file as part of an application for asylum. As discussed above, the fact that the hearing judge found that the witness's testimony was not credible for the wrong reason does not mean that the witness's testimony was accurate. Accordingly, even if we sustained the Commission's exceptions to the new reasons for which the hearing judge found that Traore's testimony was not credible, it would not follow that Traore's testimony was accurate.

- 17 -

from informing anyone of the sexual assault. Even when the victim informs someone, the disclosure may occur a great deal of time after the assault. There are voluminous possible reasons for the victim's permanent or protracted silence; examples include fear of retaliation by the perpetrator, an unwillingness to relive the experience, or, perhaps, fear that the victim will be disbelieved, ridiculed, or ostracized.[10]

In an attorney discipline proceeding, a hearing judge must evaluate an allegation of sexual assault as the hearing judge would evaluate any other allegation of misconduct. Such an analysis would necessarily include consideration of the circumstances of the alleged misconduct, the purported victim's demeanor and manner of presentation in court, and consideration of any evidence that supports or contradicts the purported victim's report. Simply stated, we do not want hearing judges in future attorney discipline proceedings to assess a report of sexual assault in the manner that the hearing judge did in this attorney discipline proceeding—namely, by evaluating the allegation of sexual assault based on the hearing judge's unfounded beliefs of what a victim of sexual assault would or should do after such an incident.

### Other Factual Matters

The Commission excepts to the hearing judge's refraining from finding as an aggravating factor vulnerability of the victims—Chanthunya's clients, Traore and

---

[10]Case in point: In this attorney discipline proceeding, Traore testified that she "didn't know what [she] was supposed to do" about Chanthunya's touching of her breast because Chanthunya had her immigration files, which included damaging information about her. In other words, Traore feared that, if she informed anyone of the alleged assault, Chanthunya could harm her chances of succeeding in her immigration matters, or reveal the damaging information about her.

Vanguere, both of whom were not United States citizens and who had immigrated to this country. In <u>Attorney Grievance Comm'n v. Thomas</u>, 440 Md. 523, 558, 103 A.3d 629, 649 (2014), this Court concluded that a lawyer's misconduct was aggravated by vulnerability of the victim, even though this Court did not state that the hearing judge found as much. This Court noted the "special vulnerability of immigrants as clients[,]" given that people who immigrate to this country may be "extremely vulnerable people, largely unable or unwilling as a practical matter to defend themselves[] from being preyed on[.]" <u>Id.</u> at 558, 103 A.3d at 649 (citations and internal quotation marks omitted). Here, as we did in <u>Thomas</u>, we determine that vulnerability of the victims was an aggravating factor. Accordingly, we sustain the Commission's exception.

In response to the hearing judge's original opinion, Chanthunya excepted to several of the hearing judge's findings of fact, asking us "to review the [testimony] of the witnesses . . . and draw [our] own independent conclusions." Chanthunya contends, among other things, that the hearing judge "[w]rongful[ly] evaluat[ed]" the evidence presented, that one of the hearing judge's findings is a "total lie[,]" that the hearing judge considered only evidence presented on direct examination and ignored testimony that Chanthunya elicited on cross-examination, and that the hearing judge "didn't grasp the main issue" concerning Traore's application for a green card. For example, Chanthunya contends:

> The hearing judge noted in his findings the following:
>
> > USCIS scheduled an interview on [] Traore's application for her green card. [] Traore and [her husband] appeared, but [Chanthunya] failed to appear. He called them at 7:30 am that morning and said that he had a flat tire. He did not ask USCIS to reschedule the interview on his client's

behalf. He did not advise [] Traore and [her husband] as to what to expect at their interview. He did not prepare them for the interview. [Chanthunya] provided no evidence to explain his contradicting statements to his client and USCIS as to whether his failure to appear at the interview was deliberate or accidental. He provided no evidence that he prepared the client for the interview, or that he communicated with USCIS on the morning of the interview regarding his failure to appear.

The hearing [j]udge erred in his summary because he only considered what [] Trao[r]e said in Examination in Chief. The [hearing j]udge did not include in his summary what [] Trao[r]e testified in Cross[-]Examination. He also did not review the documentary evidence in [the Commission]'s Exhibit 4. Hence the Summary did not represent the whole truth about matters regarding the Interview.

(Record references and bolding omitted). Thus, Chanthunya appears to take issue with the hearing judge's allegedly not having considered or included in the findings of fact all of the testimony and evidence. We are unable to extrapolate much more from Chanthunya's exceptions.

We observe initially that, just because Chanthunya disagrees with the hearing judge's findings of fact does not make the findings of fact clearly erroneous. And, that the hearing judge does not mention a particular piece of evidence or particular testimony in making findings of fact does not mean that the hearing judge failed to consider such evidence. Indeed, as this Court has recognized:

Our hearing [judges]' duties are to consider all evidence properly submitted in the discipline process. Absent indications that such evidence is not considered, we presume it was considered along with all the other evidence. . . . The fact that [] testimony [i]s not specifically discussed in the [hearing judge]'s finding does not indicate a failure to consider it. Moreover, the [hearing judge is] free to disregard th[e] evidence if it was not credible. The reception of evidence is to a large degree entrusted to the discretion of the trial judge and will seldom be reversed.

Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 385, 773 A.2d 463, 468 (2001) (citation and paragraph break omitted). Moreover, "weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder. . . . [T]he hearing judge may pick and choose which evidence to rely upon[.]" Attorney Grievance Comm'n v. Marcalus, 414 Md. 501, 512, 996 A.2d 350, 356 (2010) (brackets, citations, and internal quotation marks omitted). Reviewing Chanthunya's exceptions as a whole, we are "unable to discern any meaningful challenge to the hearing judge's findings of fact," Attorney Grievance Comm'n v. Davy, 435 Md. 674, 694, 80 A.3d 322, 333 (2013); as such, we overrule the exceptions.

In response to the hearing judge's original opinion, Chanthunya also excepted to the hearing judge's finding that there were several defects in documents that were related to Chanthunya's representation of Traore. The hearing judge's finding was supported by Zigel's expert opinion that there were several defects in the documents. Thus, the hearing judge did not clearly err.

For the above reasons, we overrule all of Chanthunya's exceptions to the hearing judge's findings of fact.[11]

### (C) Conclusions of Law

By excepting to the hearing judge's finding that Traore's testimony that Chanthunya touched her breast was not credible, the Commission implicitly excepts to the hearing

---

[11]In response to the hearing judge's supplemental opinion, Chanthunya repeats the contentions and exceptions that he made in response to the hearing judge's original opinion. For the above reasons, we reject those contentions and overrule those exceptions.

judge's conclusion in his supplemental opinion that Chanthunya did not violate MLRPC 8.4(b). Chanthunya excepts to the hearing judge's conclusion that he violated MLRPC 8.4(d). For the below reasons, we overrule both parties' exceptions and uphold all of the hearing judge's conclusions of law.

### MLRPC 1.1 (Competence) and MLRPC 1.3 (Diligence)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. "A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Here, clear and convincing evidence supports the hearing judge's conclusions in his original opinion that Chanthunya violated MLRPC 1.1 and 1.3 in representing Traore. On Traore's behalf, Chanthunya filed an application for a green card with USCIS. The application for a green card contained inaccurate statements and spaces that were not filled in, and Chanthunya failed to attach essential documents, such as the identification page of Traore's passport. Additionally, after USCIS scheduled an interview regarding Traore's application for a green card, Chanthunya failed to: prepare Traore for the interview; advise her of what to expect at the interview; appear at the interview himself; and ask USCIS to reschedule the interview. Additionally, Chanthunya failed to pursue an appeal of USCIS's denial of Traore's applications for a green card and for a waiver of grounds of inadmissibility.

Clear and convincing evidence supports the hearing judge's conclusions in his original opinion that Chanthunya violated MLRPC 1.1 and 1.3 in representing Vanguere.

- 22 -

Chanthunya failed to: prepare Vanguere for the asylum hearing; advise her of the benefits and risks of postponing her case; advise her of the type of evidence that she needed; and submit on Vanguere's behalf corroborating evidence, such as evidence that Vanguere's family members had been persecuted in the Central African Republic. Chanthunya also failed to review the Baltimore Immigration Court's file to ensure its completeness.

## MLRPC 1.4(a)(2), 1.4(a)(3), and 1.4(b) (Communication)

"A lawyer shall: . . . (2) keep the client reasonably informed about the status of the matter; [and] (3) promptly comply with reasonable requests for information[.]" MLRPC 1.4(a) (paragraph break omitted). "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." MLRPC 1.4(b).

Here, clear and convincing evidence supports the hearing judge's conclusion in his original opinion that Chanthunya violated MLRPC 1.4(a)(2) and 1.4(a)(3) in representing Traore.[12] On three occasions, USCIS requested additional documents from Chanthunya, who failed to inform Traore of USCIS's requests. Additionally, after Traore telephoned Chanthunya to ask about an appeal's status, Chanthunya promised to call her back; however, Chanthunya failed to update Traore. Furthermore, on at least ten occasions during Chanthunya's representation, Traore visited Chanthunya's office because he was not answering her telephone calls.

Clear and convincing evidence supports the hearing judge's conclusion in his

---

[12]In making his conclusion of law, the hearing judge did not specify a subsection of MLRPC 1.4.

- 23 -

original opinion that Chanthunya violated MLRPC 1.4(b) in representing Vanguere. Chanthunya failed to advise Vanguere of the benefits and risks of postponing her case.

## MLRPC 8.4(b) (Criminal Act)

"It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects[.]" MLRPC 8.4(b).

Here, as discussed above, we will not supercede the hearing judge's finding that Traore's testimony that Chanthunya touched her breast was not credible; accordingly, we do not reverse the hearing judge's conclusion in his supplemental opinion that Chanthunya did not violate MLRPC 8.4(b).

## MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Shuler, 443 Md. at 505, 117 A.3d at 45 (brackets, citation, ellipsis, and internal quotation marks omitted). For example, a lawyer can violate MLRPC 8.4(d) by violating MLRPC 1.1 (Competence), 1.3 (Diligence), and MLRPC 1.4 (Communication). See Attorney Grievance Comm'n v. Heung Sik Park, 427 Md. 180, 194, 46 A.3d 1153, 1161 (2012) (per curiam) ("[The lawyer]'s failure to pursue [his client]'s applications diligently and competently, as well as his failure to maintain sufficient communication with [his client], as demonstrated by our conclusion that [the lawyer] violated MLRPC 1.1, 1.3, and 1.4, constitutes conduct that

brings disrepute to the legal profession, in violation of MLRPC 8.4(d).").  A lawyer can violate MLRPC 8.4(d) even if the lawyer's conduct was not known or intended to be known publicly.  See Attorney Grievance Comm'n v. Basinger, 441 Md. 703, 715, 109 A.3d 1165, 1172 (2015) ("[The lawyer] raise[d a] red herring[] in contending that he did not violate MLRPC 8.4(d) because[] his statements were 'private' in the sense that they were 'not known or intended to be known publicly[.]'").

Here, clear and convincing evidence supports the hearing judge's conclusion in his original and supplemental opinions that Chanthunya violated MLRPC 8.4(d) in representing Traore and Vanguere.  As discussed above, Chanthunya violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), and 1.4(b) by failing to provide competent and diligent representation and failing to adequately communicate with Traore and Vanguere.

### MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate or attempt to violate the" MLRPC.  MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion in his supplemental opinion that Chanthunya violated MLRPC 8.4(a) in representing Traore.  As discussed above, Chanthunya violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), and 8.4(d) in representing Traore.[13]

---

[13]The Commission did not charge Chanthunya with violating MLRPC 8.4(a) in representing Vanguere, so we decline to conclude that Chanthunya violated MLRPC 8.4(a) in that instance.  However, had the Commission charged Chanthunya with violating MLRPC 8.4(a) in representing Vanguere, we would have no difficulty in concluding that clear and convincing evidence supports a conclusion that Chanthunya violated MLRPC 8.4(a) based on Chanthunya's other violations of the MLRPC in representing Vanguere.

## (D) Sanction

In its filing, the Commission recommended that we indefinitely suspend Chanthunya from the practice of law in Maryland with the right to apply for reinstatement after six months in the event that the MLRPC 8.4(b) violation is found. Otherwise, the Commission recommends that we indefinitely suspend Chanthunya from the practice of law in Maryland with the right to apply for reinstatement after sixty days. In his filing, Chanthunya recommended that we dismiss this attorney discipline proceeding.

In Shuler, 443 Md. at 506-07, 117 A.3d at 46, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

> Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to the Commission

or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Brackets, citation, and ellipses omitted).

In Attorney Grievance Comm'n v. Mooney, 359 Md. 56, 98, 97, 84, 87-88, 753 A.2d 17, 39, 31, 33-34 (2000), this Court indefinitely suspended from the practice of law in Maryland, with the right to apply for reinstatement after ninety days, a lawyer who, in separately representing four clients, violated MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers), 5.3 (Responsibilities Regarding Nonlawyer Assistants), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice). As to the first client, the lawyer failed to appear at the client's trial, and later "fail[ed] to respond to [his client's] attempted communications[.]" See Mooney, 359 Md. at 74, 77, 753 A.2d at 26, 28. As to the second client, the lawyer falsely promised his client's mother that he would file a petition and visit his client in jail. See id. at 87, 753 A.2d at 34. As to the third client, the lawyer's nonlawyer assistants incorrectly informed the lawyer's client that the client did not need to attend his trial, and the lawyer failed to keep his client informed of his case's status. See id. at 89-90, 753 A.2d at 34-

- 27 -

35. As to the fourth client, the lawyer "fail[ed], without sufficient explanation, to subpoena witnesses and to obtain medical records, which may have exculpated his client"; failed to respond to his client's communications; and failed to ensure that the lawyer's associate knew that he had assigned a case to her. See id. at 93-95, 753 A.2d at 37. In Mooney, id. at 87-88, 753 A.2d at 33-34, in finding a violation of MLPRC 8.4 as to the second client, this Court stated:

> The relevant provisions of M[L]RPC 8.4[, namely, MLRPC 8.4(c) and 8.4(d),] have already been stated, *supra*. We agree that insufficient action was taken by [the lawyer] and that he misrepresented to the client's mother that he was "taking such efforts." The record reflects that on numerous occasions respondent told [his client's mother] things that were not true: (1) he told her that he was going to file a petition for reverse waiver; and (2) that he was going to visit her son in jail. He performed neither of these activities. His comments were made with the intent to mislead his client and his client's mother. The evidence presented justifies a finding of misconduct under M[L]RPC 8.4. Accordingly, we overrule respondent's exception with regard to his misrepresentations to [his client and his client's mother].

(Footnote omitted). In concluding that an indefinite suspension from the practice of law in Maryland with the right to apply for reinstatement after ninety days was the appropriate sanction, this Court did not note any aggravating factors, and noted only one mitigating factor: the absence of prior attorney discipline. See id. at 98, 753 A.2d at 39.

In Attorney Grievance Comm'n v. Brugh, 353 Md. 475, 478-79, 727 A.2d 913, 915, 914 (1999), this Court indefinitely suspended from the practice of law in Maryland, with the right to apply for reinstatement after sixty days, a lawyer who violated MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.16(d) (Terminating Representation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of

- 28 -

Justice). In separately representing each of three clients, the lawyer "neglected the matter and failed to communicate with his client." Brugh, 353 Md. at 476, 727 A.2d at 913. This Court observed that, at the time of his misconduct, the lawyer was experiencing personal problems in that his wife was having an affair. See id. at 477, 727 A.2d at 914. This Court also noted that the hearing judge found that the lawyer suffered from an adjustment disorder; that the lawyer had "recover[ed]" thanks to antidepressants and therapy; and that the lawyer was "genuinely remorseful." Id. at 478, 727 A.2d at 914. Finally, at oral argument, the lawyer's counsel stated that the lawyer intended to pay within six months the money that the lawyer owed to his former clients. See id. at 478, 727 A.2d at 914.

Here, Chanthunya violated MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice). Chanthunya's misconduct cost Traore the opportunity to have USCIS consider an appeal, and impeded the progress of both of his clients in becoming naturalized.

We note five aggravating factors: (1) a pattern of misconduct, as Chanthunya engaged in similar misconduct in separately representing two clients; (2) multiple violations of the MLRPC; (3) a refusal to acknowledge the misconduct's wrongful nature; (4) substantial experience in the practice of law, as Chanthunya had been a member of the Bar of Maryland for approximately ten years at the time of his misconduct; and (5) the victims' vulnerability, as both of Chanthunya's clients, Traore and Vanguere, were not United States citizens and had immigrated to this country, see Thomas, 440 Md. at 558, 103 A.3d at 649 (This Court noted the "special vulnerability of immigrants as clients[,]"

- 29 -

given that people who immigrate to this Country may be "extremely vulnerable people, largely unable or unwilling as a practical matter to defend themselves[] from being preyed on[.]" (Citations and internal quotation marks omitted)).

We note two mitigating factors: (1) the absence of prior attorney discipline; and (2) the absence of a dishonest or selfish motive.

We conclude that the appropriate sanction for Chanthunya's misconduct is an indefinite suspension from the practice of law in Maryland with the right to apply for reinstatement after sixty days. This sanction will impress on Chanthunya and other lawyers in immigration cases the importance of representing their clients competently, diligently, and with adequate communication, as clients in such cases are vulnerable and dependent on their lawyers for their—and, in some instances, their family members'—very ability to continue living in the United States.

As noted above, in its filing, the Commission initially recommended that we indefinitely suspend Chanthunya from the practice of law in Maryland with the right to apply for reinstatement after six months. At oral argument, however, Assistant Bar Counsel stated that, if this Court concluded that Chanthunya did not violate MLRPC 8.4(b), the Commission would recommend that we indefinitely suspend Chanthunya from the practice of law in Maryland with the right to apply for reinstatement after sixty days. Upon consideration of Chanthunya's violations of MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), and 8.4(d), the negative impacts that Chanthunya's misconduct had on both of his clients, the five aggravating factors, and the fact that there are only two mitigating factors—the absence of prior attorney discipline and the absence of a dishonest or selfish motive—to

- 30 -

adequately protect the public, we are more than convinced that the sanction that Bar counsel recommended at oral argument, an indefinite suspension with the right to apply for reinstatement after sixty days, is appropriate.

Although not involving entirely similar misconduct, <u>Mooney</u> and <u>Brugh</u> are helpful in determining the appropriate sanction in this case. Chanthunya's misconduct was not as serious as the lawyer's misconduct in <u>Mooney</u>, 359 Md. at 98, 97, 84, 87-88, 753 A.2d at 39, 31, 33-34; for example, Chathunya did not violate MLRPC 8.4(c). Accordingly, <u>Mooney</u> suggests that Chanthunya's misconduct merits a sanction that is less than an indefinite suspension with the right to apply for reinstatement after ninety days.

Chanthunya's misconduct is similar to that of the lawyer in <u>Brugh</u>, 353 Md. at 353 Md. at 476, 727 A.2d at 913; like the lawyer in <u>Brugh</u>, Chanthunya neglected cases and failed to communicate with clients. It is true that the lawyer in <u>Brugh</u>, <u>id.</u> at 478-79, 727 A.2d at 915, 914, violated an MLRPC that Chanthunya did not—namely, MLRPC 1.16(d) (Terminating Representation)—and the lawyer in <u>Brugh</u> engaged in misconduct involving three clients, in contrast to Chanthunya's misconduct involving two clients. No aggravating factors, however, accompanied the misconduct of the lawyer in <u>Brugh</u>, <u>id.</u> at 477, 727 A.2d at 914. And, significantly, the lawyer in <u>Brugh</u>, <u>id.</u> at 477-78, 727 A.2d at 914, offered substantial evidence of mitigating factors in the form of personal problems, a mental disability, remorse, and an effort to make restitution. Here, although Chanthunya's misconduct involved only two clients, as opposed to three, and although he did not violate MLRPC 1.16(d), there were multiple aggravating factors and fewer mitigating accompanying Chanthunya's misconduct. Specifically, only two mitigating factors

accompany Chanthunya's misconduct, and five aggravating factors—including a refusal to acknowledge the misconduct, substantial experience in the practice of law, and the victims' vulnerability—accompany Chanthunya's misconduct. A comparison of Brugh with this case indicates that an indefinite suspension with the right to apply for reinstatement after sixty days is the appropriate sanction for Chanthunya.

For the above reasons, we indefinitely suspend Chanthunya from the practice of law in Maryland with the right to apply for reinstatement after sixty days. The suspension will begin thirty days after the date on which this opinion is filed.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ALEXANDER MANJANJA CHANTHUNYA.**

Judge Harrell joins in the judgment only.